UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

_____

In Re:

WYNIT DISTRIBUTION, LLC, *et al.*[1]

Debtors.

JOINT ADMINISTRATION

Case No.   17-42726

Chapter 11 Case

_____

UNITED STATES TRUSTEE'S RESPONSE AND OBJECTIONS
TO MOTIONS FOR JOINT ADMINISTRATION;
FOR CONTINUED USE OF BANKS & CASH MANAGEMENT SYSTEMS;
TO PAY WAGES, SALARIES & BENEFITS;
and FOR USE OF CASH COLLATERAL
_____

The United States Trustee, through his undersigned attorney, submits this response to various first day motions filed in the above entitled cases.   The motions before the court seek orders approving 1) the joint administration of the cases, 2) the continuation of cash management systems, 5) the payment of wages and salaries, and 6) the use of cash collateral.   In furtherance of his position, the U.S. Trustee states the following:

1.   The voluntary petitions commencing these chapter 11 cases were filed on September 8, 2015.   The cases are now pending before the court.   Numerous motions have been filed by the related debtors.   The U.S. Trustee's position with respect to each of the motions is as follows:

2.   <u>Joint Administration</u>.   The U.S. Trustee has no objection to the entry of an order for the joint administration of the related cases.

---

[1] Includes the following chapter 11 debtors:   WYNIT Distribution, LLC (Case #17-42726; WD Navarre Distribution, LLC (Case #17-42728); WD Encore Software, LLC (Case #17-42729); WD Navarre Holdings, LLC (Case #17-32864); WD Navarre Digital Services, LLC (Case #17-32865); WYNIT Holdings, Inc. (Case #17-32866); and WD Navarre Canada, ULC (Case #17-32867).

3. <u>Continuation of Bank Accounts and Cash Management Systems.</u>  In general, the U.S. Trustee has no objection to the entry of the order for the continuation of the cash management systems.  The U.S. Trustee does, however reserve the right to raise non-compliance with the requirements of 11 U.S.C. §345(b).  Specifically, that section requires the funds of debtors to be handled in authorized bank depositories which are approved and monitored by the U.S. Trustee. The Royal Bank of Canada (RBC) is not an authorized depository at this time.  To the extent RBC does obtain authorization and complies with reporting requirements for the handling of the debtors' funds, the U.S. Trustee has no objection.  In the absence of compliance, the U.S. Trustee reserves the right to compel compliance with §345(b).

4. <u>Payment of Ongoing Wages, Salaries and Benefits</u>.  The U.S. Trustee also does not, in general, oppose the relief sought relative to the payment of ongoing wages, salaries and related benefits.  However, there should be certain supplemental facts established in the record, and certain parameters set forth in the order.

    A.  Specifically, the order should establish the cap on payouts of $12,850.00, as required by §507(a)(4).  The order should also provide that amount must have been earned in the 180 days preceding the filing of the petition.

    B.  In addition, the record should be supplemented to establish whether the order will apply to current management, including the identity of the individuals and the amount to which current management is to be paid and is otherwise entitled to claim.

    C.  Finally, ¶9(vii) of the motion provides for employee reimbursement of up to $25,000.  Before such reimbursement is allowed, there should be a clear record of the employee to reimbursed and the nature of the reimbursement[2].

5.  <u>Use of Cash Collateral and Post Petition Borrowing</u>.  The U.S. Trustee objects to the debtors' motion for use of cash collateral and for post petition borrowing.  The motion fails to comply with the requirements of the bankruptcy code and otherwise fails contain adequate information on which the is relief sought, as follows.

    A.  The Motion fails to meet the requirements of approving a post petition priming loan.  The motion and all of its exhibits fail to identify the separate prepetition secured creditors or what they are owed.  Further, nothing in the record establishes the consent by those creditors to have their first liens (to the extent they exist) primed, as required by §364(d).  Also, nothing in the record establishes that if primed, their secured positions will be adequately protected.  Exhibit C-1 to the motion (Motion, p. 136 of 300) contains a list of post-petition lenders and their new commitments, but it is unclear if their new loans will be in proportion to the pre-petition loans (or even if they are the same lenders).  It is also unclear whether <u>all</u> of the prepetition lenders have agreed to participate in the post-petition lending.  The DIP financing agreement attached to the motion (p. 32 of 300) states that the lenders are identified on the signature pages of the agreement but those signatures are not attached.  In fact, p. 133 of 300 states "Lender Signature Pages to Be Attached", but they

---

[2] The pending cash collateral motion, (Doc. #6, p.202 of 300) includes a lease agreement for a 2017 Maserati Levante with a "base rent due" of $1,661.71 per month.  The U.S. Trustee objects to the reimburse of any such claimed expenses.  The U.S. Trustee also objects to any post petition borrowing to make such lease payments.

are not. Given the lack of an adequate record and failure to meet the requirements of §364(d), the request for post petition borrowing must be denied.

B. The motion states that the new lenders will not take a lien on Chapter 5 avoidance actions, but will take a lien on the proceeds of such actions. Motion, p. 10 of 300, Interim proposed order, ¶9. This is a distinction without meaning. The U.S. Trustee objects to the establishment of any claim to any part of any avoidance proceeds by any post petition lender at any time. On information and belief, these cases were commenced, in part, to take advantage of the 90 day look back period for avoidance actions under §547. The Declaration of Peter Richichi (Doc. #5, at ¶¶10-13) describes "Supplier A" which, on June 12, 2017, received a new second lien on all of the debtors' assets to secure a pre-existing debt. That security agreement was given approximately 88 days before the cases were filed and, on information and belief, the debtors have a very large avoidance action against Supplier A. There is no reason to give a new security agreement to the new lenders at this initial state of the cases (see below). This provision of the post-petition lending agreement should not be approved. At minimum, it should not be approved until such time as an unsecured creditors committee has been formed and has had an opportunity to review the proposed lien and the existence of avoidance actions.

C. The motion and proposed order are inconsistent regarding the interim funding of the post petition loan. The motion (p.16 of 300, ¶20) says the interim funding will be $2.5 million, while the proposed interim order (p.226 of 300 [p.3]) says it will be $3.5 million. The record needs to be made clear before the interim loan can be approved.

D. The budget attached to the motion fails to show what is necessary for the debtors to borrow to avoid immediate and irreparable harm (see Fed.R.Bankr.P.

4001(c)(2)).   The final hearing has now been set for September 27, 2017, and between now and that date, the precise cash needs of the debtors are unclear.   The motion, (pp.267–267 of 300) shows expense columns for the weeks of Sept 17 and Sept 24.   Those columns show fluctuations due to payroll, but the total cash needs appear to be less than $1.5 million, not the $2.5 or $3.5 million sought in the motion.   Moreover, the budget appears to include expenses which are not clearly needed to avoid "immediate and irreparable harm", such as "Total Interest and Bank Charges" and "Other Payments".   These vague descriptions do not meet the necessary standards.   During the interim period, a precise budget is needed with the precise use of funds before the motion to approve interim borrowing can be approved.

     E. Exhibit C to the motion is the "Collateral Schedule" (p.268 of 300).   It shows the debtors' "equity cushion" going from $95.6 million on 9/5/17, down to $89.3 million on 10/1/17.   The motion (p.15 of 300, ¶18) states that the aggregate debt to senior lenders on both loans and letters of credit total $76,724,574.38.    Hence, it appears the prepetition lenders are oversecured.   The interim budget (p.267 of 300) shows receivables collections of $2,205,424 in both the week of September 17 and the week of September 24.   As a result, it is unclear why the post petition loan is necessary since it appears the debtors can simply collect their receivables and use those receipts to fund operations in the short term.

     F. Before the interim borrowing is approved, the movants should disclose the existence of any personal guarantees or other obligors on the debt to the post-petition lenders.

     G.   Nothing in the record shows that there are cross collateralization provisions among the debtors, in their obligations to the prepetition lenders.   Before any use of cash

collateral or post petition borrowing agreement is approved, the existence of such prepetition conditions should be established.

 H. The proposed interim order attached to the cash collateral/lending motion contains numerous provisions that are either not supported by factual evidence in the record or are simply overreaching.

  I. The proposed interim order, ¶7, provides that the post petition loan proceeds will be used to "make the adequate protection payments required under this order". Paragraph 17(c) of that order appears to provide that all collections by the debtors will be turned over to the prepetition lenders as adequate protection payments. Given the apparent oversecured nature of the secured creditors' claims, and the lack of need for additional cash, these provisions in the order for use of cash collateral appear unneeded.

  II. At ¶16, the proposed interim order establishes new limits on "all landlord agreements". Such provisions are inappropriate in the context of in interim cash collateral order since it is not clear the landlords have even been served.

  III. Paragraph 26 of the proposed interim is wholly unclear. In subparagraph (a) it provides for the automatic lifting of the automatic stay, but subparagraph (c) provides for enforcement of lien interests "after obtaining court approval after notice and hearing". If there's a default, the lenders should be required to advise the court and parties via a request for relief from the automatic stay before exercising remedies against collateral.

  IV. Under ¶35 of the proposed interim order, the secured lenders will not be required to file proofs of claims or requests for administrative expenses, but instead

the order purports to establish a new claims procedure. Such new procedures are inappropriate and should not be allowed.

      V.   Other overreaching provisions of the proposed interim order may also exist.

## CONCLUSION

6. As set forth above, the U.S. Trustee has no objection to the debtors' motions for the joint administration of the cases. The U.S. Trustee has limited concerns regarding the use of existing bank accounts and the payment of employees, as set forth above. The U.S. Trustee objects to the use of cash collateral and request for post petition borrowing. The movants have failed to establish the basis for the relief sought in the cash collateral motion, based on the objections described above.

WHEREFORE, the United States Trustee submits this response to the various motions now brought before the court on an expedited basis. The U.S. Trustee objects to the motion for use of cash collateral and for approval of post petition borrowing, to the extent set forth above.

Dated: September 12, 2017                          DANIEL M. McDERMOTT
                                                                 United States Trustee
                                                                  Region 12

                                                 By:  _e/Michael R. Fadlovich_____
                                                     MICHAEL R. FADLOVICH
                                                   Trial Attorney
                                                   MN Attorney I.D. No. 158410
                                                   U.S. Trustee's Office
                                                   Suite 1015 U.S. Courthouse
                                                   300 South Fourth Street
                                                   Minneapolis, MN   55415
                                                   (612) 334-1350

## VERIFICATION

    I, Michael R. Fadlovich, an attorney for the United States Trustee, do hereby certify that the foregoing is true and correct to the best of my knowledge, information and belief.

September 12, 2017          _____s/Michael R. Fadlovich_____
                                           Michael R. Fadlovich

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

WYNIT DISTRIBUTION, LLC, *et al.*[3]
Debtors.

JOINT ADMINISTRATION

Case No.   17-42726

Chapter 11 Case

## O R D E R

The above-entitled cases came on before the court on the motion seeking use of cash collateral and approval of post petition borrowing.   Michael Fadlovich appeared for the U.S. Trustee.   Other appearances were as noted in the record.

Based on the motion, the objections by the U.S. Trustee, and the findings of the court on the record, it is hereby ORDERED

That the approval of the use of cash collateral and post petition borrowing is denied without prejudice.

_____
Kathleen H. Sanberg
Chief United States Bankruptcy Judge

---

[3] Includes the following chapter 11 debtors:   WYNIT Distribution, LLC (Case #17-42726; WD Navarre Distribution, LLC (Case #17-42728); WD Encore Software, LLC (Case #17-42729); WD Navarre Holdings, LLC (Case #17-32864); WD Navarre Digital Services, LLC (Case #17-32865); WYNIT Holdings, Inc. (Case #17-32866); and WD Navarre Canada, ULC (Case #17-32867).

# **CERTIFICATE OF SERVICE**

In Re:

                                      JOINT ADMINISTRATION

WYNIT DISTRIBUTION, LLC, *et al.*[4]

        Debtors.                      Case No.   17-42726

                                      Chapter 11 Case

The undersigned hereby certifies under penalty of perjury that he is an employee in the Office of the United States Trustee for the District of Minnesota and is a person of such age and discretion as to be competent to serve papers. That on September 12, 2017, he caused to be served a copy of the attached: United States Trustee's Response to the debtors' motions for 1) the joint administration of the cases, 2) the payment of post petition wages and benefits, 4) the continuation of cash management systems, 5) the use of cash collateral and post petition borrowing, by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

    WYNIT Distribution LLC
    700 W 76th Street Suite 116
    Eden Prairie, MN 55344

    Robert T. Kugler
    Stinson Leonard Street
    150 South Fifth Street
    Suite 2300
    Minneapolis, MN 55402

        Other parties were served via the court's CM/ECF case filing system.

                                                  **By:**   **e/Michael R. Fadlovich**

---

[4]Includes the following chapter 11 debtors: WYNIT Distribution, LLC (Case #17-42726; WD Navarre Distribution, LLC (Case #17-42728); WD Encore Software, LLC (Case #17-42729); WD Navarre Holdings, LLC (Case #17-32864); WD Navarre Digital Services, LLC (Case #17-32865); WYNIT Holdings, Inc. (Case #17-32866); and WD Navarre Canada, ULC (Case #17-32867).

Michael R. Fadlovich
Trial Attorney
MN Atty I.D. No. 158410
U.S. Trustee's Office
300 South Fourth St., #1015
Minneapolis, MN   55415
(612) 334-1350