## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | Joint Administration Pending |
| WYNIT DISTRIBUTION, LLC, *et al.*[1] <br> Debtors. | Case No. 17-42726 |
| | Chapter 11 Cases |

---

**PRELIMINARY OBJECTION AND REQUEST FOR ADEQUATE PROTECTION
OF QUICKEN, INC. IN RESPONSE TO THE DEBTORS' MOTION FOR
INTERIM AND FINAL ORDERS GRANTING (I) AN EXPEDITED HEARING,
(II) AUTHORITY TO (A) OBTAIN POSTPETITION FACILITY, (B) USE CASH
COLLATERAL, AND (C) PROVIDE CERTAIN PROTECTIONS
TO PREPETITION SENIOR LENDERS, AND (III) RELATED RELIEF**

Quicken, Inc. ("Quicken"), hereby files this preliminary objection and request for

adequate protection (the "Objection") in response to the *Debtors' Motion for Interim and Final*

*Orders Granting (I) an Expedited Hearing, (II) Authority to (A) Obtain Postpetition Facility, (B)*

*Use Cash Collateral, and (C) Provide Certain Protections to Prepetition Senior Lenders, and*

*(III) Related Relief* [Docket No. 6] (the "DIP Financing Motion"),[2] which the debtors in the

above-captioned chapter 11 cases (collectively, the "Debtors") filed on September 8, 2017.  In

support of this Objection, Quicken respectfully represents as follows:

### BACKGROUND

1.      Quicken and WYNIT Distribution, LLC ("WYNIT") are parties to a Distribution

Agreement dated as of July 19, 2016 (the "Distribution Agreement")[3].  Pursuant to the

Agreement, WYNIT agreed to distribute certain of Quicken's software products (the "Products")

---

[1]      The Debtors in these chapter 11 cases are the following: Wynit Distribution, LLC (Case No. 17-2726), WD Navarre Distribution, LLC (Case No. 17-42728), WD Encore Software, LLC (Case No. 17-42729), WD Navarre Digital Services, LLC (Case No. 17-32865), WD Navarre Holdings, LLC (Case No. 17-32864), Wynit Holdings, Inc. (Case No. 17-32866), WD Navarre Canada, ULC (Case No. 17-32867).

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the DIP Financing Motion.

[3]      Pursuant to the Distribution Agreement, the terms of the Distribution Agreement are confidential. Therefore, a copy is not attached to this Objection.

via two separate arrangements: a sale arrangement and a consignment arrangement.  Through the

sale arrangement, Quicken sold Products directly to WYNIT, which WYNIT would then sell to

retailers.  Through the consignment arrangement, the terms of which are set forth on a rider (the

"Consignment Rider") annexed to the Distribution Agreement, Quicken remains vested with all

right, title and interest in the "Consigned Products" (the term used for Products in the

Consignment Rider) until the retailer sells the Consigned Products to end users.  WYNIT

provides to Quicken reports from the retailers regarding sales of the Consigned Products to end

users, and WYNIT remits payments to Quicken on a monthly basis.

2.    As of the Petition Date, upon information and belief, WYNIT held more than

6,600 units of Product designated as Consigned Products and the retailers held more than 56,000

units of Product designated as Consigned Products.[4]   In addition, there is approximately

$654,340.18 in outstanding accounts receivable ("A/R") due to Quicken on account of

Consigned Products that retailers sold to end users.[5]

3.    On September 8, 2017, the Debtors filed the DIP Financing Motion.  Through the

DIP Financing Motion, the Debtors propose to enter in a senior secured postpetition revolving

loan facility of up to $15,000,000 with certain of their prepetition first-lien lenders and to use

cash collateral to fund their operations through the sale of the Debtors' assets.

**PRELIMINARY OBJECTION AND REQUEST FOR ADEQUATE PROTECTION**

4.    The Debtors' proposed DIP financing impairs Quicken's rights under the

Distribution Agreement and should be denied unless the proposed interim order (the "Interim

Order"), which is attached to the DIP Financing Motion as Exhibit B, is revised to address

---

[4]        As of the Petition Date, upon information and belief, WYNIT also held more than 4,700 units of Products
that are not Consigned Products ("Non-Consigned Products").
[5]        There is approximately $872,945.00 in outstanding A/R due to Quicken on account of Non-Consigned
Products sold by Quicken to WYNIT.

ACTIVE/92570253.4

Quicken's objections.    In addition, various provisions of the proposed DIP financing are prejudicial to unsecured creditors and must be stricken or revised.

### A.  The Proposed DIP Financing Impairs Quicken's Contractual Rights.

5.    The Debtors propose to grant to certain of their prepetition and postpetition lenders various postpetition liens on, and claims payable from the proceeds of, all or nearly all of the Debtors' assets, including inventory and A/R.  *See* Interim Order at ¶¶ 9, 11, 17.

6.    Quicken objects to the DIP financing to the extent it seeks to grant any liens (priming, adequate protection or otherwise) on, or claims (administrative, superpriority or otherwise) payable from the proceeds of, Quicken's Consigned Products, wherever located.  As set forth in the Consignment Rider annexed to the Distribution Agreement, Quicken remains the owner of the Consigned Products until a retailer has sold them to end users.  Thus, WYNIT should not be permitted—indeed, it does not have the power—to grant liens on Consigned Products that have not yet been sold to end users.  Similarly, Quicken objects to any proposed disposition of the Consigned Products (including returns) by WYNIT, the Prepetition Senior Lenders or the Postpetition Lenders.

7.    With regard to Consigned Products that have been sold to end users, WYNIT should not be permitted to grant liens (priming, adequate protection or otherwise) on, or claims (administrative, superpriority or otherwise) payable from, the A/R generated by retailers' sales to end users, and Quicken objects to the use of any cash proceeds WYNIT collects from the Consigned Products.  Such cash belongs to Quicken and is not property of the estates.  As

ACTIVE/92570253.4

adequate protection of Quicken's interest in such cash proceeds, Quicken requests that all proceeds WYNIT collects be remitted to Quicken.[6]

8.      In addition, Quicken specifically objects to paragraph 20(c) of the Interim Order—which prohibits the Debtors from returning goods to creditors pursuant to Bankruptcy Code section 546(h) or pursuant to contracts with suppliers such as Quicken—to the extent it impairs Quicken's contractual rights under its agreements with WYNIT or the retailers.  Quicken also objects to paragraph 22 of the Interim Order, which attempts to invalidate provisions in prepetition agreements that restrict the Debtors' ability to grant liens on assets or otherwise comply with the Interim Order, to the extent it overrides applicable case law that would enforce such provisions.

**B.  Various Provisions of the Proposed DIP Financing are Prejudicial to Creditors and Must be Stricken or Revised.**

9.      In addition to the objections set forth above, Quicken objects to the following provisions in the Interim Order:

a.   <u>Avoidance Actions</u>.   The Debtors should not be permitted to grant the Prepetition Senior Lenders or the Postpetition Lenders (a) any liens on avoidance actions or commercial tort claims for which the lenders do not have valid and perfected prepetition liens, or the proceeds thereof; or (b) superpriority administrative expense claims payable from the proceeds of avoidance actions or commercial tort claims.  *See* Interim Order at ¶¶ 9, 11, 17.

---

[6]      To the extent WYNIT disputes Quicken's position regarding A/R and cash proceeds generated by the retailers' sale of Consigned Products, Quicken requests such proceeds be set aside, earmarked, or otherwise preserved pending this Court's determination of the dispute.

4

b. <u>Committee Standing</u>. The Creditors' Committee, to the extent one is appointed, should not be required to file a motion seeking standing to bring an action against the Debtors' Prepetition Senior Lenders. Because the Debtors have abdicated their fiduciary duties in favor of the Creditors' Committee, such committee stands in the Debtors' shoes and should not have the additional hurdle of being required to obtain a separate order on standing. In sum, the Creditors' Committee should be granted automatic standing, which will reduce costs to the estates. *See* Interim Order at ¶ 29.

c. <u>Good Faith Finding</u>. No evidence has been submitted warranting a finding of good faith under section 364(e) of the Bankruptcy Code. *See* Interim Order at ¶ L. Until sufficient evidence is submitted, any such finding is premature. In addition, the Prepetition Senior Lenders, the Postpetition Lenders and their agents should not be granted protections that exceed those afforded by section 364(e). *See* Interim Order at ¶ 22.

d. <u>Amendments</u>. All proposed amendments to the DIP financing documents, including any alleged immaterial amendments, should be disclosed to all parties. All proposed amendments should be approved by the Court or, at a minimum, should not become effective without a sufficient notice period having expired without an objection. The Interim Order only requires disclosure of "material" amendments and purports to leave the determination of "materiality" to self-interested parties. This unnecessary construct presents risks to unsecured creditors. *See* Interim Order at ¶ 3.

ACTIVE/92570253.4

e.  <u>Agents' and Lenders' Professional Fees</u>.    The Postpetition Agent's professional fees should be subject to Court approval.  *See* Interim Order at ¶ 6.  Bankruptcy Code section 506(b) only permits the allowance and payment of "reasonable" fees. Interested parties should be the arbiters of reasonableness and only the Court can "allow" fees.  In addition, because the Postpetition Liens are subordinated to all Prior Liens, the Debtors should not be permitted to pay, on other than a provisional basis, any such fees to the Postpetition Agent unless and until the Postpetition Agent has demonstrated that the Prepetition Senior Lenders and the Postpetition Lenders, taken together, are oversecured.  *See* Interim Order at ¶¶ 10, 18. Similarly, the Prepetition Senior Agent's and Prepetition Senior Lenders' professional fees should also be subject to Court approval and the Debtors should not be permitted to pay, on other than a provisional basis, any such fees to the Prepetition Senior Agent or the Prepetition Senior Lenders unless and until they have demonstrated that the Prepetition Senior Lenders are oversecured.  *See* Interim Order at ¶ 17(c).

f.  <u>Professional Fee Allocation</u>. The professional fee allocation in the proposed budget attached to the Interim Order provides insufficient funding for the Creditors' Committee's professionals. The budget must be revised to allow the Creditors' Committee to properly exercise its statutory and fiduciary duties.

g.  <u>Investigation Budget</u>. The Creditors' Committee, assuming it is formed, is permitted to use only $25,000 to investigate the Prepetition Senior

Obligations and the Prepetition Senior Liens.  *See* Interim Order at ¶ 28. This amount is inadequate and should be increased to permit the Creditors' Committee to conduct a proper investigation and fulfill its statutory and fiduciary duties.

h.  <u>Sale Milestones</u>.  The Debtors seek approval of restrictive sale milestones, which were likely imposed by their lenders.  *See* Interim Order at ¶ 15. No showing has been made as to why the sale milestones are reasonable or necessary.  The milestones should be extended to the extent necessary to maximize the value of the Debtors' assets.

i.  <u>Events of Default</u>.  The Postpetition Agent and the Postpetition Lenders should not be permitted to terminate the DIP financing, bar the Debtors' access to its cash collateral, or exercise their remedies under the Postpetition Credit Agreement without an order of the Court.  The Debtors and/or any Creditors' Committee should be permitted to (i) present to the Court any issue or defense in response to an allegation that an Event of Default has occurred and (ii) demonstrate that the Postpetition Agent and the Postpetition Lenders are adequately protected or otherwise not entitled to exercise their remedies.  *See* Interim Order at ¶ 26.  As currently drafted, paragraph 26 of the Interim Order locks the Debtors out of the courthouse and effectively terminates the case upon the occurrence of an alleged Event of Default. The Debtors and their creditors must be protected from such catastrophic results by having an opportunity to

ACTIVE/92570253.4

convince this Court that there are alternatives to immediate liquidation that adequately protect the Postpetition Lenders.

j. <u>Waivers</u>.  A section 506(c) waiver is inappropriate until it is clear that the estates will have sufficient funds to pay all administrative expenses in full. *See* Interim Order at ¶ 19.  In addition, the Debtors have provided no basis for curtailing the Court's power to: (i) exclude postpetition proceeds from prepetition collateral based on the equities of the case under section 552(b) of the Bankruptcy Code, or (ii) marshal assets. *See* Interim Order at ¶ 30.

## <u>RESERVATION OF RIGHTS</u>

10.    Quicken reserves all of its rights with respect to the DIP Financing Motion, including the right to supplement this Objection and to raise additional objections before or at the interim and/or final hearings to consider approval of the DIP Financing Motion.

11.    In addition, Quicken reserves all of its rights to amend or supplement this Objection to reflect other claims or additional amounts that are outstanding, or that become outstanding, including any and all post-petition or administrative expenses.  Nothing contained in, or omitted from, this Objection constitutes an admission by Quicken with respect to its claims against the Debtors.

## <u>CONCLUSION</u>

WHEREFORE, Quicken respectfully requests that the Court (a) deny the DIP Financing Motion unless the Interim Order addresses Quicken's objections, and (b) grant Quicken such other or further relief as the Court deems just and proper.

ACTIVE/92570253.4

Dated:    September 13, 2017

/e/ James M. Jorissen

_____

James M. Jorissen, #262833
LEONARD, O'BRIEN,
SPENCER, GALE & SAYRE, LTD.
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
Telephone: 612-455-5038
jjorissen@losgs.com

-and-

William P. Weintraub *(pro hac vice pending)*
Barry Z. Bazian *(pro hac vice pending)*
GOODWIN PROCTER LLP
New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Telephone: 212-813-8800
wweintraub@goodwinlaw.com
bbazian@goodwinlaw.com

*Counsel to Quicken, Inc.*

9

## VERIFICATION

I, John Eichhorn, Chief Financial Officer for Quicken, Inc., a creditor and party in interest herein, declare under penalty of perjury that the factual information set forth in the foregoing Objection is true and correct according to the best of my knowledge, information, and belief.

Dated: September 12, 2017

_____
John Eichhorn