## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER<br>BKY 17-42726 |
| | |
| WYNIT DISTRIBUTION, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC | BKY 17-42728 |
| WD Encore Software, LLC | BKY 17-42729 |
| WD Navarre Holdings, LLC | BKY 17-32864 |
| WD Navarre Digital Services, LLC | BKY 17-32865 |
| WYNIT Holdings, Inc. | BKY 17-32866 |
| WD Navarre Canada, ULC | BKY 17-32867 |
| Debtors. | |

## SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SENIOR LENDERS AND CERTAIN OTHER PREPETITION SECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (IV) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

These cases are before the court on the motion of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), dated September 8, 2017 (the "**Motion**"), (a) seeking the entry of an interim order and a final order: (i) authorizing Wynit Distribution, LLC, a New York limited liability company ("**US Parent**"), WD Navarre Distribution, LLC, a New York limited liability company ("**Navarre Distribution**"), WD Encore Software, LLC, a New York limited liability company ("**Encore Software**"), WD Navarre Digital Services, LLC, a New York limited liability company ("**Navarre Digital**"); WD Navarre Holdings, LLC, a New York limited liability company ("**Navarre Holdings**", together with US Parent, Navarre Distribution, Encore Software, and Navarre Digital, individually, a "**US Borrower**", and collectively, "**US Borrowers**"), Wynit Holdings, Inc., a New York corporation ("**Canadian Parent**"), and

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/27/2017*
Lori Vosejpka, Clerk, by LH

WD Navarre Canada, ULC, a Nova Scotia unlimited liability company ("**Canadian Borrower**"; Canadian Borrower and US Borrowers, each individually, a "**Borrower**", and collectively, the "**Borrowers**") to obtain senior secured post-petition financing in an aggregate principal amount not to exceed $15,000,000 (the "**Postpetition Facility**"), pursuant to Section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), from Wells Fargo Bank, National Association (in its individual capacity, "**Wells Fargo**"), as administrative agent (in such capacity, the "**Postpetition Agent**") for itself and for the lenders party to the Postpetition Credit Agreement (defined below) (collectively with Wells Fargo, the "**Postpetition Lenders**"), pursuant to the terms of any interim or final order and that certain Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of September 13, 2017, by and among each Borrower, the Postpetition Agent, and the Postpetition Lenders, in substantially the form attached to the Motion as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Postpetition Credit Agreement**");[1] (ii) authorizing the Debtors to execute, deliver and enter into the Postpetition Credit Agreement and other Postpetition Loan Documents (as defined in paragraph 2[2] below) and to perform such other and further acts as may be required in connection with the Postpetition Loan Documents; (iii) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, liens pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to Section 364(d) of the Bankruptcy Code) to the Postpetition Agent, for the benefit of itself and the Postpetition Lenders, to secure all obligations of the Debtors under and with respect to the Postpetition Facility; (iv) authorizing the Debtors' limited use of Cash Collateral (as defined in

---

[1]  Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Postpetition Credit Agreement.

[2]  References to paragraphs of this Order (as defined herein) and to sections and paragraphs of any other document are for the convenience of the parties only and for compliance with any applicable Local Bankruptcy Rules of this Court, and are in no way any waiver of any other applicable provisions of this Order or such document.  Such references are also deemed to include and incorporate all subparts of any referenced section or paragraph.

ATL22340958

CORE/9990000.2173/135245957.1

paragraph E below), solely on the terms and conditions set forth in any interim or final orders

and in the Postpetition Loan Documents; (v) granting adequate protection to the Prepetition

Senior Lenders (as defined in paragraph D below), whose liens and security interests are being

primed by the Postpetition Facility, as more fully set forth any interim or final order; (vi)

granting adequate protection to FitBit and WFCDF (each as defined in paragraph D below),

whose liens and security interests are being primed by the Postpetition Facility, as more fully set

forth in any interim or final order; and (vii) modifying the automatic stay imposed under Section

362 of the Bankruptcy Code; (b) requesting, pursuant to Rule 4001 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") and the applicable Local Bankruptcy Rules of

this Court, that an emergency interim hearing on the Motion be held before this Court to consider

entry of the First Interim Order (as defined below), authorizing the Debtors to borrow under the

Postpetition Loan Documents, on an interim basis, up to an aggregate principal amount not to

exceed $3,500,000; and (c) requesting, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2)

and the applicable Local Bankruptcy Rules of this Court, that this Court (i) schedule a final

hearing on the Motion to consider entry of a final order authorizing the balance of the

borrowings and letter of credit issuances under the Postpetition Loan Documents on a final basis,

and (ii) approve notice procedures with respect thereto; and this Court having held a hearing on

the Motion on September 13, 2017 (the "**First Interim Hearing**"); and this Court having entered

the *Interim Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing*

*Pursuant to 11 U.S.C. § 364, (II) Authorizing the Debtors' Limited Use of Cash Collateral*

*Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection to Prepetition Senior Lenders*

*and Certain Other Prepetition Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363, and*

*364, and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 56] (the

"**First Interim Order**") on September 13, 2017; this Court having held a further interim hearing

on the Motion on September 27, 2017 (the "**Second Interim Hearing**") to consider entry of this

ATL22340958

CORE/9990000.2173/135245957.1

second interim order (the "**Order**"); this Court considered the Motion and all pleadings related thereto, including the record made by the Debtors at the First Interim Hearing and at the Second Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

## THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[3]

A.      <u>Commencement of Cases</u>.  On September 8, 2017 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.  On September 15, 2017, the United States Trustee for Region 12 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in the Chapter 11 Cases.

B.      <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.  Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      <u>Adequate Notice</u>.  On September 8, 2017, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors have provided notice of the Motion and the Final Hearing as set forth in the Motion and the First Interim Order.  After providing notice of the Final Hearing, the Debtors, in consultation with the Postpetition Agent, the Prepetition Senior

---

3  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

ATL22340958

CORE/9990000.2173/135245957.1

Agent (as defined herein), the Creditors' Committee and other parties in interest, determined that it was in the best interests of the estates and their creditors to seek entry of a further interim order and to continue the Final Hearing to a later date.  Given the nature of the relief sought in the Motion and the notice given of the September 27, 2017 hearing, this Court concludes that the foregoing notice of this Second Interim Hearing was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding is necessary or required.

        D.      Prepetition Loan Documents, Liens and Claims.

        (a)      Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 31 of this Order, the Debtors admit, stipulate and agree that, on and as of the Petition Date, the Debtors were indebted and bound as described below:

**Prepetition Senior Agent and Prepetition Senior Lenders**

        1.      Pursuant to that certain Credit Agreement, dated as of November 29, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Senior Credit Agreement**"), among each Borrower (with Canadian Parent party thereto as a guarantor), Wells Fargo, as administrative agent for itself and the Prepetition Senior Lenders (as defined below) (in such capacity, the "**Prepetition Senior Agent**"), and the other lenders party thereto (collectively, together with each Bank Product Provider and each Issuing Bank (each as defined in the Prepetition Senior Credit Agreement), the "**Prepetition Senior Lenders**"), the Prepetition Senior Agent and Prepetition Senior Lenders agreed to extend loans to, issue letters of credit for, and provide services and other credit accommodations to, the Borrowers.  The Prepetition Senior Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "**Loan Documents**" as defined therein, are collectively referred to herein as the "**Prepetition Senior Loan Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time).

        2.      All obligations of the Debtors arising under, or in connection with, the Prepetition Senior Credit Agreement (including, without limitation, the "**Obligations**" and "**Bank Product Obligations**", each as defined therein), any other Prepetition Senior Loan Document, and/or any Bank Product Agreement shall collectively be referred to herein as the "**Prepetition Senior Obligations**."

        3.      Pursuant to the Guaranty and Security Agreements (as defined in the Prepetition Senior Credit Agreement) and all other Prepetition Senior Loan Document that purport to create a Lien (as defined in the Prepetition Senior Credit Agreement) in favor of

Prepetition Senior Agent (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Senior Security Documents**"), each Debtor granted to the Prepetition Senior Agent, for the benefit of itself and the Prepetition Senior Lenders, to secure the Prepetition Senior Obligations, a first priority security interest in and continuing lien (the "**Prepetition Senior Liens**") on substantially all of such Debtor's assets and property, and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.  All collateral granted or pledged by the Debtors pursuant to any Prepetition Senior Security Document or any other Prepetition Senior Loan Document, including, without limitation, the "**Collateral**" as defined in the Prepetition Senior Credit Agreement, and all pre-petition and post-petition proceeds thereof shall collectively be referred to herein as the "**Prepetition Senior Collateral**".

4.       (i) All Prepetition Senior Loan Documents executed and delivered by the Debtors to the Prepetition Senior Agent or any Prepetition Senior Lender are valid and enforceable by the Prepetition Senior Agent and the Prepetition Senior Lenders against each of the Debtors; (ii) the Prepetition Senior Liens constitute valid, binding, enforceable and perfected first priority liens and security interests in and on the Prepetition Senior Collateral, subject only to the Prior Liens (as defined below) and are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined)) in accordance with the provisions of this Order); (iii) the Prepetition Senior Obligations constitute legal, valid and binding obligations of each of the Debtors, (iv) no offsets, defenses or counterclaims to the Prepetition Senior Obligations exist, (v) no portion of the Prepetition Senior Obligations, or any amounts previously paid to Prepetition Senior Agent or any Prepetition Senior Lender on account of or with respect to the Prepetition Senior Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (vi) each Guaranty and Security Agreement (as defined in the Prepetition Senior Credit Agreement) continues in full force and effect notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the Postpetition Agent or Postpetition Lenders to the Debtors pursuant to the terms of this Order or Postpetition Loan Documents.

5.       The Debtors have no valid claims (as such term is defined in Section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Senior Agent or any Prepetition Senior Lender with respect to the Prepetition Senior Credit Agreement or any other Prepetition Senior Loan Documents, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to Sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

6.       As of the Petition Date, (i) the Debtors were truly and justly indebted to the Prepetition Senior Agent and Prepetition Senior Lenders pursuant to the Prepetition Senior Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $76,724,574.38 in respect of loans made and letters of credit issued by the Prepetition Senior Agent and Prepetition Senior Lenders, <u>plus</u> all accrued and hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any

attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Senior Loan Documents) now or hereafter due under the Prepetition Senior Credit Agreement and the other Prepetition Senior Loan Documents, and (ii) the value of the Prepetition Senior Collateral exceeded the amount of Prepetition Senior Obligations.

### Fitbit and WFCDF

(b)     Without prejudice to the rights of any party (including, without limitation, the Debtors), the Debtors state that, on and as of the Petition Date, the Debtors were indebted and bound as described below:

1.     Fitbit, Inc. ("**Fitbit**") sold certain goods to some or all of the Debtors before the Petition Date (such goods, the "**Fitbit Goods**").

2.     Pursuant to the Security Agreement, dated as of June 12, 2017 (the "**Fitbit Security Agreement**"), by and among Fitbit and the Debtors, the Debtors granted security interests in favor of Fitbit in the Debtors' Accounts, Chattel Paper, and Inventory (other than Floorplan Inventory) (each as defined in the Prepetition Senior Credit Agreement) and all proceeds and products of the any of the foregoing (such assets, the "**Fitbit Collateral**") to secure the Debtors' obligations owed to Fitbit (such obligations, the "**Fitbit Obligations**"; such security interests, the "**Fitbit Junior Liens**").

3.     US Parent and Wells Fargo Commercial Distribution Finance, LLC ("**WFCDF**") are parties to an Amended and Restated Inventory Financing Agreement dated September 22, 2015 (the "**WFCDF Agreement**", and together with the WFCDF Intercreditor Agreements (as defined below), the "**WFCDF Security Documents**") pursuant to which WFCDF provided inventory financing to US Parent.

4.     US Parent and certain of the Debtors granted security interests in favor of WFCDF in certain of their assets (such assets, the "**WFCDF Collateral**") to secure the US Parent's obligations owed to WFCDF pursuant to the WFCDF Agreement (such obligations, the "**WFCDF Obligations**"; such security interests, the "**WFCDF Liens**").

(c)     The Debtors irrevocably waive any right to challenge or contest the Prepetition Senior Liens and the validity of the Prepetition Senior Obligations; provided that, subject to paragraph 30 of this Order and the time limitations specified in paragraph 31 of this Order, none of the foregoing acknowledgments or agreements by the Debtors contained in this paragraph D shall be binding on any other party and shall not affect the rights of any committee,

Person or entity (other than the Debtors with respect to the acknowledgements and agreements set forth in paragraph D(a)) with respect to their rights to assert, pursue or otherwise allege any of the claims and actions described in paragraph 31 of this Order.

(d)     As used herein, the term "**Prior Liens**" means only valid, enforceable, and non-avoidable liens and security interests in the Prepetition Senior Collateral that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any subordination or intercreditor agreements.  For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Senior Liens, and/or the Adequate Protection Senior Liens (as defined in paragraph 17(a) below), all of which liens are being primed by the Postpetition Liens as set forth herein.

E.     Cash Collateral.  For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by Section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below in paragraph 9 of this Order), Prepetition Senior Collateral, the Fitbit Collateral, and the WFCDF Collateral in which any of the Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit, or WFCDF has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Order, any other order of this Court, applicable law or otherwise.

F.     Exigent Circumstances.  The Debtors have an immediate and critical need to obtain post-petition financing under the Postpetition Facility and to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, make payroll, and

-8-

satisfy other working capital and operational needs. The Debtors' access to sufficient working capital and liquidity through the incurrence of post-petition financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the value of the Debtors' estates. Consequently, without access to the Postpetition Facility and the use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtors and their estates would suffer immediate and irreparable harm.

G.      No Alternative Sources of Funding. The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition liquidity needs. Given the Debtors' current financial condition and capital structure, the Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under Sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under Section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under Section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under Section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under Section 364(d)(1) of the Bankruptcy Code, from sources other than the Postpetition Agent and the Postpetition Lenders on terms more favorable than the terms of the Postpetition Facility. The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the Postpetition Facility. The Debtors require both additional financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order in order to satisfy their post-petition liquidity needs. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the Postpetition Agent and the Postpetition Lenders pursuant to the terms of this Order and the Postpetition Loan Documents represents the best financing presently available to the Debtors.

H.      Willingness of Postpetition Lenders. The Postpetition Agent and the Postpetition Lenders have indicated a willingness to provide the Debtors with certain financing

commitments, but solely on the terms and conditions set forth in this Order and in the Postpetition Loan Documents.

I. <u>Limited Consent</u>. The consent of the Prepetition Senior Agent and the Prepetition Senior Lenders to the priming of their liens by the Postpetition Liens is limited to the Postpetition Facility presently before this Court, with Wells Fargo as Postpetition Agent and a subset of the Prepetition Senior Lenders as Postpetition Lenders, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of this Postpetition Facility with any party other than Wells Fargo as Postpetition Agent. Furthermore, the consent of the Prepetition Senior Agent and the Prepetition Senior Lenders to the Debtors' use of Cash Collateral and the priming of their liens by the Postpetition Liens as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Senior Agent and the Prepetition Senior Lenders that their interests in the Prepetition Senior Collateral are adequately protected pursuant to this Order or otherwise. Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Senior Agent or any Prepetition Senior Lender are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the Prepetition Senior Liens. The provisions of this paragraph shall be subject in all respects to the rights of the parties pursuant to the Prepetition Fitbit Intercreditor Agreement (as defined below).

J. <u>Section 364(d) Finding</u>. The security interests and liens granted pursuant to this Order to the Postpetition Agent, for the benefit of itself and the Postpetition Lenders, are appropriate under Section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in any property of the Debtors' estates, and/or (ii) the holders of such security interests and liens have consented (or are deemed to have consented) to the

security interests and priming liens granted pursuant to this Order to the Postpetition Agent for the benefit of itself and the Postpetition Lenders.

K.     Prepetition Intercreditor Agreements.

1.     Fitbit, the Debtors, and the Prepetition Senior Agent on behalf of itself and the Prepetition Senior Lenders entered into that certain Lien Subordination Agreement, dated as of June 12, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Fitbit Intercreditor Agreement**", and together with the Fitbit Security Agreement, the "**Fitbit Security Documents**").

2.     Pursuant and subject to (A) that certain Intercreditor Agreement (ABL Agent as First Priority Representative), dated as of November 29, 2016, by and between the Prepetition Senior Agent, on behalf of itself and the Prepetition Senior Lenders, WFCDF, and the US Parent (as amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition WFCDF ABL Priority Intercreditor Agreement**"), and (B) that certain Intercreditor Agreement (Floorplan Lender as First Priority Representative), dated as of November 29, 2016, by and between the Prepetition Senior Agent, on behalf of itself and the Prepetition Senior Lenders, WFCDF, and the US Parent (as amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition WFCDF Floorplan Priority Intercreditor Agreement**"; together with the Prepetition WFCDF ABL Priority Intercreditor Agreement, the "**Prepetition WFCDF Intercreditor Agreements**"; collectively, the Prepetition WFCDF Intercreditor Agreements and the Prepetition Fitbit Intercreditor Agreement, the "**Prepetition Intercreditor Agreements**"), WFCDF has agreed: (i) that the Prepetition Senior Liens on the WFCDF Collateral will be superior to any Lien (as defined in the Prepetition Senior Credit Agreement) or other interest of WFCDF on or in the WFCDF Collateral (other than the Excluded Inventory Collateral as defined in the Prepetition WFCDF ABL Priority Intercreditor Agreement) (such Liens and other interests of WFCDF, other than WFCDF's Liens on the Excluded Inventory Collateral, the "**WFCDF Junior Liens**"), including, without limitation, the WFCDF Junior Liens, (ii) to subordinate its liens in the Prepetition Senior Collateral (other than the Excluded Inventory Collateral) to the Postpetition Liens, Prepetition Senior Adequate Protection Liens, and the Carve-Out to the extent that the Prepetition Senior Liens are subordinated to the Postpetition Liens and the Carve-Out, (iii) to consent to the Postpetition Facility, and (iv) that it will not request adequate protection or any other relief in connection with the Debtors' entry into the Postpetition Facility or their use of Cash Collateral, except to the extent permitted under Section 5.4 of the Prepetition WFCDF ABL Priority Intercreditor Agreement.

L.     <u>Good Cause Shown</u>.  Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and such relief is in the best interest of the Debtors, their estates and creditors.  In particular, the authorizations granted herein for the Debtors to execute the Postpetition Loan Documents, to use the Cash Collateral, and to

-11-

obtain additional interim financing, including on a priming lien basis, are necessary to avoid immediate and irreparable harm to the Debtors and their estates, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    Section 364(e); Good Faith.    The Postpetition Facility, Postpetition Loan Documents, use of Cash Collateral and provision of adequate protection contained herein have been negotiated in good faith and at arm's-length among the Debtors, the Prepetition Senior Agent, Postpetition Agent, Fitbit, and WFCDF.    Accordingly, any credit extended and loans made to, Cash Collateral used by, and adequate protection provided by the Debtors pursuant to this Order shall be, and hereby are, deemed to have been extended, issued, made, used or provided, as the case may be, in "good faith" as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code.

For reasons stated orally and recorded in open court,

**IT IS ORDERED:**

1.    Motion Granted.    The Motion is approved on an interim basis on the terms and conditions set forth in this Order.    This Order shall become effective immediately upon its entry.    To the extent any provisions in this Order conflict with any provisions of the Postpetition Loan Documents, the provisions of this Order shall control and govern to the extent of such conflict.    All objections to the entry of this Order have been withdrawn or overruled.

2.    Postpetition Loan Documents.    The terms and conditions of the Postpetition Credit Agreement are hereby approved.    The Debtors' entry into and delivery of the Postpetition Credit Agreement and such additional documents, instruments, notes and agreements have been reasonably required by the Postpetition Agent to implement the terms or effectuate the purposes of this Order (as such additional documents, instruments, notes and agreements may be amended, restated, supplemented or otherwise modified from time to time,

ATL22340958

CORE/9990000.2173/135245957.1

together with the Postpetition Credit Agreement, the "**Postpetition Loan Documents**") and is hereby approved on an interim basis.  Each Borrower is hereby authorized on an interim basis to borrow money and obtain letters of credit under the Postpetition Credit Agreement, in accordance with the terms of this Order and the Postpetition Loan Documents.  Upon execution and delivery thereof by any Borrower or any other applicable Debtor, the Postpetition Loan Documents shall be incorporated by reference as part of this Order and shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto (and its respective estate, successor and assigns) in accordance with the terms thereof.

3.     Amendments.  The Debtors are hereby authorized, without further notice, motion or application to, order of, or hearing before, this Court, to enter into agreements with the Postpetition Agent providing for any non-material modifications to the Approved Budget (as defined below), the Professional Fee Budget (as defined below), or the Postpetition Credit Agreement, or of any other modifications to the Postpetition Credit Agreement necessary to conform the Postpetition Credit Agreement to this Order; provided, however, that notice of any material modification or amendment to the Approved Budget, the Professional Fee Budget, or the Postpetition Credit Agreement shall be provided to counsel to the Creditors' Committee and counsel to the U.S. Trustee, each of whom shall have three (3) days from the date of such notice within which to object in writing to such material modification or amendment.  If the Creditors' Committee or the U.S. Trustee timely objects in writing served on counsel for the Agent and the Debtors to any material modification or amendment to the Approved Budget or the Postpetition Credit Agreement, then such modification or amendment shall only be permitted pursuant to an order of this Court.

4.     Permitted Use.

a.     Generally.  Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and proceeds of the Postpetition Facility, obtain and

maintain Letters of Credit and pay Postpetition Obligations solely in accordance with and pursuant to the financial covenants, availability formulae, and other terms and conditions set forth in the Postpetition Loan Documents and this Order, including, without limitation, pursuant to the Approved Budget (as defined in underline paragraph 8 below), but in all events only until the earliest of (i) December 7, 2017, (ii) the closing of any refinancing of the Prepetition Senior Obligations and Postpetition Obligations, (iii) confirmation of any chapter 11 plan in the Chapter 11 Cases, (iv) the conversion or dismissal of any of the Chapter 11 Cases, (v) the appointment of a trustee or examiner in any of the Chapter 11 Cases, and (vi) at the option of the Postpetition Agent in its sole discretion, the occurrence of any Event of Default under this Order and/or the Postpetition Credit Agreement (the date of the earliest such occurrence, the "**Commitment Termination Date**").  Notwithstanding the foregoing, but subject to the Maximum Amount (as defined in paragraph 7 below), if the Postpetition Agent or the Postpetition Lenders in their respective sole discretion advance funds or provide other extensions of credit to the Debtors in excess of any financial covenants, availability formulae, or other terms and conditions (or any other limitations in the Postpetition Loan Documents, including, without limitation, the Approved Budget), such advances (and any other indebtedness in excess of such amount) shall constitute Postpetition Obligations entitled to the rights, priorities, benefits and protections of the Postpetition Loan Documents and this Order.

                b.        No Duty to Monitor Compliance.  The Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders, the Prepetition Senior Lenders, Fitbit, and WFCDF may assume the Debtors will comply with this Order, the Approved Budget and the Postpetition Loan Documents and shall not (i) have any obligation with respect to the Debtors' use of Cash Collateral or the use of proceeds of the Postpetition Facility; (ii) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae, or other terms and conditions of any Postpetition Loan Document or (iii) be obligated to pay (directly or

-14-

indirectly from the Prepetition Senior Collateral or Postpetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Postpetition Loan Documents.

5.      **Postpetition Obligations**.      For purposes of this Order, the term "**Postpetition Obligations**" shall mean all amounts owing under or in connection with the Postpetition Credit Agreement and other Postpetition Loan Documents (including, without limitation, all "**Obligations**" as defined in the Postpetition Credit Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable under the Postpetition Loan Documents), and any obligations in respect of letters of credit or indemnity claims, as well as any Bank Product Obligations (as defined in the Postpetition Credit Agreement), in each case whether contingent or otherwise.

6.      **Interest, Fees, Costs and Expenses**.      The Postpetition Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Order and the Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.    The Debtors shall pay on demand all fees, costs, expenses and other charges payable under the terms of the Postpetition Loan Documents, including, without limitation, all fees, costs and expenses described in the Postpetition Credit Agreement, in each case whether or not the Postpetition Credit Agreement and transactions contemplated therein are consummated.    None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; *provided*, that after the Closing Date (as defined in the Postpetition Credit Agreement) the Postpetition Agent shall submit summaries of its professional fee invoices to the Debtors, the U.S. Trustee and counsel for the Creditors' Committee.    Such summary

-15-

invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summaries shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Creditors' Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee summary invoice submitted by the Postpetition Agent; provided that, (i) any portion of any such summary invoice that is not the subject of any objection shall be paid immediately, and (ii) any objection shall be forever waived and barred unless (A) it is filed with this Court and served on counsel to the Postpetition Agent no later than ten (10) days after the objecting party's receipt of the applicable professional fee summary invoice, and (B) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any fees, costs and expenses of the Postpetition Agent set forth in a professional fee summary invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. The Debtors shall indemnify the Postpetition Agent and the Postpetition Lenders (and other applicable parties) to the extent set forth in the Postpetition Loan Documents. All such unpaid fees, costs, expenses, and charges that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Creditors' Committee in accordance with the terms hereof shall constitute Postpetition Obligations and shall be secured by the Postpetition Collateral as specified in this Order. Any and all fees, commissions, costs and expenses paid prior to the Petition Date by any Debtor to the Postpetition Agent or Postpetition Lenders in connection with or with respect to the Postpetition Facility, Postpetition Credit Agreement or other Postpetition Loan Documents are hereby approved in full.

-16-

7.     <u>Maximum Amount</u>.  Subject to the terms and conditions set forth in this Order and in the Postpetition Loan Documents, the Debtors may use the proceeds of the Postpetition Facility and the Cash Collateral solely to: (i) pay outstanding Postpetition Obligations as provided in the Postpetition Loan Documents and this Order, (ii) make the adequate protection payments required under this Order, and (iii) fund general corporate and working capital requirements of the Debtors constituting administrative expenses in the Chapter 11 Cases, in each case in accordance with the Approved Budget and the terms of the Postpetition Loan Documents; <u>provided</u>, <u>however</u>, that no proceeds of the Postpetition Facility or the Cash Collateral may be used to fund any employee retention programs unless and until the Postpetition Agent has given its prior written consent for such use.   The aggregate principal amount of Revolving Loans available under the Postpetition Credit Agreement shall not at any time exceed $15,000,000 without further order of this Court (the "**<u>Maximum Amount</u>**"); <u>provided</u>, <u>however</u>, that from and after the entry of the First Interim Order and prior to the entry of the Final Order, the Maximum Amount shall be limited to $8,000,000.

8.     <u>Approved Budget</u>.

a.     <u>Generally</u>.   In addition to the amounts funded pursuant to the Initial Approved Budget (as defined in the First Interim Order), which amounts are afforded those protections set forth in the First Interim Order, the following is an additional 4-week budget (the "**<u>Second Interim Approved Budget</u>**") which reflects on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Second Interim Approved Budget:

| *Week* | 4 | 5 | 6 | 7 |
|---|---|---|---|---|
| Weeks ending | 10/8/2017 | 10/15/2017 | 10/22/2017 | 10/29/2017 |
| TOTAL Collections | $ 1,655,627 | $ 1,655,627 | $ 1,655,627 | $ 1,655,627 |
| Total Rent | - | - | - | 324,540 |
| Total Payroll and Benefits | - | 487,410 | - | 595,860 |

-17-

| | | | | |
|---|---|---|---|---|
| Total Transportation | 5,000 | 5,000 | 5,000 | 5,000 |
| Total Professional Fees (1) | 1,082,000 | 297,000 | 187,000 | 157,000 |
| Total Equipment Leases | 223,921 | 4,889 | - | - |
| Total IT Services | 17,040 | 85,283 | 48,656 | - |
| Total Warehouse Operating Costs | 59,500 | 62,500 | 22,500 | 22,500 |
| Total Interest and Bank Charges | 7,500 | 7,500 | 7,500 | 7,500 |
| DIP Agent Professional Fees | - | 675,000 | | |
| Total Other Payments | 44,510 | 81,490 | 32,150 | 62,670 |
| TOTAL Disbursements | 1,439,471 | 1,706,071 | 302,806 | 1,175,070 |
| Net Cash Flow | $ 216,157 | $ (50,444) | $ 1,352,821 | $ 480,557 |
| Beginning Debtor-in-Possession Loan | $ 2,827,396 | $ 4,266,867 | $ 5,972,938 | $ 6,275,744 |
| Less: Collections after Paydown of Pre-Petition | - | - | - | - |
| Add: Disbursements | 1,439,471 | 1,706,071 | 302,806 | 1,175,070 |
| Ending Debtor-in-Possession Loan | $ 4,266,867 | $ 5,972,938 | $ 6,275,744 | $ 7,450,813 |

(1) Fees escrowed with Debtors' counsel for Retained Professionals. This is in addition to the $150,000 retainer for the Debtors' financing advisor and $150,000 for Debtors' counsel.

**Estate Professional Fees:**

| | | | | |
|---|---|---|---|---|
| Escrowed Fees | $ 1,082,000 | $ 297,000 | $ 187,000 | $ 157,000 |
| Cumulative Escrowed Fees | $ 1,082,000 | $ 1,379,000 | $ 1,566,000 | $ 1,723,000 |

Note: The first week amount of $1,082,000 is the original carve-out of $800,000 plus the first week incurred expense of $282,000.

b.      The Second Interim Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by Debtors and approved by the Postpetition Agent in writing (each such additional budget, a "**Supplemental Approved Budget**"), in each case without further notice, motion or application to, order of, or hearing before, this Court (except as required by <u>paragraph 3</u> above).  Whichever of the Second Interim Approved Budget or any Supplemental Approved Budget that is in effect at any time shall constitute the "**Approved Budget**."

c.      Budget Covenants.  On a weekly basis for the period from the Petition Date through the last day of the week of determination, actual Revolver Usage, outstanding Prepetition Senior Obligations, receipts of and disbursements by the Debtors shall comply with the terms of the Postpetition Credit Agreement.  The Debtors shall provide to the Postpetition Agent, so as actually to be received within two (2) business days following the end

-18-

of each week, weekly line-by-line certified variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to the report date, comparing actual Canadian Revolver Usage, US Revolver Usage, Revolver Usage, outstanding Prepetition Senior Obligations, cash receipts and disbursements to amounts projected in the Approved Budget, in form and scope reasonably acceptable to the Postpetition Agent.  The Debtors shall, on the second (2nd) Business Day of each week from the Closing Date until the Commitment Termination Date, deliver to the Postpetition Agent an updated, "rolling" 13-week budget which sets forth by line item updated projected Revolver Usage, outstanding Prepetition Senior Obligations, receipts and disbursements for the Debtors during the period commencing from the end of the previous week through and including thirteen weeks thereafter; provided that the Debtors shall still be subject to and be governed by the terms of the Approved Budget then in effect and the Postpetition Agent, Prepetition Senior Agent, Postpetition Lenders and Prepetition Senior Lenders shall, as applicable, have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto.  The Debtors acknowledge and agree that (i) the incurrence or payment by the Debtors of expenses (x) other than the itemized amounts set forth in the Approved Budget or (y) in excess of the variances permitted by Section 7 of, and the definition of "Substantial Compliance" set forth in, the Postpetition Credit Agreement, or (ii) other violation of the terms and condition of this sub-paragraph (b) (each a "**Budget Default**"), shall constitute an Event of Default under this Order and the Postpetition Credit Agreement.

9.    Postpetition Liens.  As security for the full and timely payment of the Postpetition Obligations, the Postpetition Agent, for the benefit of the Postpetition Agent and the Postpetition Lenders, is hereby granted, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests, liens and mortgages (collectively, the "**Postpetition Liens**") in and upon all pre-petition and post-petition real and personal, tangible and intangible property and assets of each of

ATL22340958

CORE/9990000.2173/135245957.1

the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all Prepetition Senior Collateral, cash (including all Cash Collateral wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of each Debtor's direct and indirect domestic and foreign subsidiaries, all inter-company notes held by the Debtors, copyrights, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action (exclusive of actions for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (the "**Avoidance Actions**") and exclusive of the proceeds and recoveries from the Avoidance Actions (the "**Avoidance Action Proceeds**")), and the Prepetition Senior Collateral, and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, the "**Postpetition Collateral**").  Such Postpetition Liens shall not be released except to the extent that the Postpetition Obligations and Prepetition Senior Obligations have been permanently and indefeasibly paid in full, in cash and the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, and Prepetition Senior Lenders have received a releases from each of the Debtors and their estates in form and substance acceptable to the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, and Prepetition Senior Lenders.

          10.    <u>Other Priority Matters</u>.

          a.    Subject to the Carve-Out, the Postpetition Liens: (i) shall, pursuant to Section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all Postpetition Collateral that is not otherwise subject to any Prior Lien; (ii) shall,

ATL22340958

CORE/9990000.2173/135245957.1

pursuant to Section 364(d)(1) of the Bankruptcy Code, be senior to and prime (A) the Prepetition Senior Liens, (B) the Adequate Protection Senior Liens, (C) the Adequate Protection Fitbit Liens, and (D) the Adequate Protection WFCDF Liens (the liens described in clauses (A), (B), (C), and (D) above, collectively, the "**Primed Liens**"); and (iii) shall, pursuant to Section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Prior Liens (other than the Primed Liens) on or in the Postpetition Collateral. Other than the Carve-Out and Prior Liens, the Postpetition Liens shall at all times be senior to the following (collectively, the "**Subordinate Liens and Related Rights**"):  (1) the rights of any Debtor and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Chapter 11 Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**"); (2) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, and (3) any security interest or lien which is either (x) avoided or otherwise preserved for the benefit of any Debtor's estate under Section 551 or any other provision of the Bankruptcy Code, or (y) junior or otherwise subordinate to the Prepetition Senior Liens.  The Postpetition Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Other than the Carve-Out and Prior Liens, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or pari passu with the Postpetition Liens in these Chapter 11 Cases or any Successor Case without the express written consent of the Postpetition Agent given in accordance with the Postpetition Credit Agreement (which consent may be withheld in its sole discretion).

ATL22340958

CORE/9990000.2173/135245957.1

Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Prior Liens.

b.      Quicken, Inc. ("**Quicken**") and US Parent are party to that certain Distribution Agreement dated as of July 19, 2016 (the "**Quicken Distribution Agreement**") attached to which is a rider that sets forth the terms of a "consignment arrangement" (the "**Quicken Consignment Rider**") as to certain products delivered by Quicken to US Parent (any products delivered pursuant to such Quicken Consignment Rider, the "**Specified Quicken Products**").  Nothing contained in this Order shall have any effect on (i) the determination of whether the consignment arrangement set forth in the Quicken Consignment Rider is a true consignment agreement; (ii) who is the owner of the Specified Quicken Products; or (iii) the extent, validity, and priority of Quicken's rights and interests in or to, or ownership of, the Specified Quicken Products, or any accounts receivable generated by such Specified Quicken Products, or any proceeds of any of the foregoing, which rights are hereby specifically reserved by all parties.  For the avoidance of doubt, nothing contained in this Order will grant the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate protection liens, or otherwise) in the Specified Quicken Products or in any accounts receivable generated by such Specified Quicken Products, or in any proceeds of any of the foregoing, or entitle the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF to assert any priority or superpriority claims or rights to such Specified Quicken Products or any accounts receivable generated by such Specified Quicken Products, or in any proceeds of any of the foregoing, pending a judicial determination or consensual resolution of the competing claims of all parties,

-22-

including, but not limited to, Quicken, the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders, Fitbit, WFCDF, and the Debtors, to such Specified Quicken Products or any proceeds thereof.

          c.    McAfee, LLC (as successor to Network Associates, Inc., "**McAfee**") and one or more of the Debtors are party to that certain Distribution Agreement dated as of August 1, 2001 (the "**McAfee Distribution Agreement**") pursuant to which that certain Consignment Rider to Distribution Agreement dated as of July 27, 2011 and that certain Canadian Consignment Rider to Distribution Agreement dated as of August 16, 2011 were executed (collectively, the "**McAfee Consignment Riders**") which set forth the terms for distribution of certain products created by McAfee (any products delivered pursuant to such McAfee Consignment Riders, the "**Specified McAfee Products**").  Nothing contained in this Order shall have any effect on (i) the determination of whether the arrangements set forth in the McAfee Consignment Riders are a true consignment agreements; (ii) who is the owner of the Specified McAfee Products; or (iii) the extent, validity, and priority of McAfee's rights and interests in or to, or ownership of, the Specified McAfee Products, or any accounts receivable generated by such Specified McAfee Products, or any proceeds of any of the foregoing, which rights are hereby specifically reserved by all parties.  For the avoidance of doubt, nothing contained in this Order will grant Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate protection liens, or otherwise) in the Specified McAfee Products or in any accounts receivable generated by such Specified McAfee Products, or in any proceeds of any of the foregoing, or entitle the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or

-23-

WFCDF to assert any priority or superpriority claims or rights to such Specified McAfee Products or any accounts receivable generated by such Specified McAfee Products, or in any proceeds of any of the foregoing, pending a judicial determination or consensual resolution of the competing claims of all parties, including, but not limited to, McAfee, the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders, Fitbit, WFCDF, and the Debtors, to such Specified McAfee Products or any proceeds thereof.

   d. VIDBOX, Inc. ("**Vidbox**") and US Parent are party to that certain Distribution Agreement Computer Software (Sell-Thru) (the "**Vidbox Distribution Agreement**") and that certain Rider to Computer Software Distribution Agreement, each dated as of February 28, 2008 that sets forth the terms of a "consignment arrangement" (as amended, restated, supplemented, or otherwise modified from time to time, the "**Vidbox Consignment Rider**") as to certain products delivered by Vidbox to US Parent (any products delivered pursuant to such Vidbox Consignment Rider, the "**Specified Vidbox Products**"). Nothing contained in this Order shall have any effect on (i) the determination of whether the consignment arrangement set forth in the Vidbox Consignment Rider is a true consignment agreement; (ii) who is the owner of the Specified Vidbox Products; or (iii) the extent, validity, and priority of Vidbox's rights and interests in or to, or ownership of, the Specified Vidbox Products, or any accounts receivable generated by such Specified Vidbox Products, or any proceeds of any of the foregoing, which rights are hereby specifically reserved by all parties. For the avoidance of doubt, nothing contained in this Order will grant Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate protection liens, or otherwise) in the Specified Vidbox Products or in any accounts receivable generated by such

ATL22340958

Specified Vidbox Products, or in any proceeds of any of the foregoing, or entitle the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF to assert any priority or superpriority claims or rights to such Specified Vidbox Products or any accounts receivable generated by such Specified Vidbox Products, or in any proceeds of any of the foregoing, pending a judicial determination or consensual resolution of the competing claims of all parties, including, but not limited to, Vidbox, the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders, Fitbit, WFCDF, and the Debtors, to such Specified Vidbox Products or any proceeds thereof.

e.      Sage Software, Inc. ("**Sage US**"), Sage Software Canada Ltd. ("**Sage Canada**," collectively, with Sage US, "**Sage**"), US Parent and WD Navarre Canada, ULC are party to that certain Distribution Agreement Computer Software Terms dated as of August 4, 2011 (the "**Sage Distribution Agreement**"), amended by a rider that sets forth the terms of a "consignment arrangement" dated June 6, 2012 (the "**Sage Consignment Rider**") and amended by Amendment #1 on or about April 1, 2016 (the "**Amendment**," and collectively with the Sage Distribution Agreement and the Sage Consignment Rider, the "**Sage Contract**") as to certain products delivered by Sage in Canada (any products delivered pursuant to such Sage Contract, the "**Specified Sage Products**").  Nothing contained in this Order shall have any effect on (i) the determination of whether the consignment arrangement set forth in the Sage Contract is a true consignment agreement; (ii) who is the owner of the Specified Sage Products; or (iii) the extent, validity, and priority of Sage's rights and interests in or to, or ownership of, the Specified Sage Products, or any accounts receivable generated by such Specified Sage Products, or any proceeds of any of the foregoing, which rights are hereby specifically reserved by all parties.  For the avoidance of doubt, nothing contained in this Order will grant Postpetition Lenders, the

-25-

Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate protection liens, or otherwise) in the Specified Sage Products or in any accounts receivable generated by such Specified Sage Products, or in any proceeds of any of the foregoing, or entitle the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF to assert any priority or superpriority claims or rights to such Specified Sage Products or any accounts receivable generated by such Specified Sage Products, or in any proceeds of any of the foregoing, pending a judicial determination or consensual resolution of the competing claims of all parties, including, but not limited to, Sage, the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders, Fitbit, WFCDF, and the Debtors, to such Specified Sage Products or any proceeds thereof.

    f.  AVG Technologies USA, Inc. ("**AVG**"), US Parent and certain other affiliated Debtors are party to that certain Distribution Agreement Computer Software (Sell-Thru) (including any amendments, supplements, modifications or riders, the "**AVG Distribution Agreement**") as to certain products delivered by AVG to US Parent (any products delivered pursuant to such AVG Distribution Agreement, the "**Specified AVG Products**").  Nothing contained in this Order shall have any effect on (i) the determination of whether the consignment arrangement set forth in the AVG Distribution Agreement is a true consignment agreement; (ii) who is the owner of the Specified AVG Products; or (iii) the extent, validity, and priority of AVG's rights and interests in or to, or ownership of, the Specified AVG Products, or any accounts receivable generated by such Specified AVG Products, or any proceeds of any of the foregoing, which rights are hereby specifically reserved by all parties.  For the avoidance of doubt, nothing contained in this Order will grant Postpetition Lenders, the

ATL22340958

CORE/9990000.2173/135245957.1

Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or

WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate

protection liens, or otherwise) in the Specified AVG Products or in any accounts receivable

generated by such Specified AVG Products, or in any proceeds of any of the foregoing, or entitle

the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition

Senior Agent, Fitbit, or WFCDF to assert any priority or superpriority claims or rights to such

Specified AVG Products or any accounts receivable generated by such Specified AVG Products,

or in any proceeds of any of the foregoing, pending a judicial determination or consensual

resolution of the competing claims of all parties, including, but not limited to, AVG, the

Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders,

Fitbit, WFCDF, and the Debtors, to such Specified AVG Products or any proceeds thereof.

g.      Kaijet Technology International Limited, Inc. ("**Kaijet**") and certain

Debtors are party to a certain distribution agreement (including any amendments, supplements,

modifications or riders, the "**Kaijet Distribution Agreement**") as to certain products delivered

by Kaijet (any products delivered pursuant to such Kaijet Distribution Agreement, the "**Specified**

**Kaijet Products**").   Nothing contained in this Order shall have any effect on (i) the

determination of whether the consignment arrangement set forth in the Kaijet Distribution

Agreement is a true consignment agreement; (ii) who is the owner of the Specified Kaijet

Products; or (iii) the extent, validity, and priority of Kaijet's rights and interests in or to, or

ownership of, the Specified Kaijet Products, or any accounts receivable generated by such

Specified Kaijet Products, or any proceeds of any of the foregoing, which rights are hereby

specifically reserved by all parties.  For the avoidance of doubt, nothing contained in this Order

will grant Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the

-27-

Prepetition Senior Agent, Fitbit, or WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate protection liens, or otherwise) in the Specified Kaijet Products or in any accounts receivable generated by such Specified Kaijet Products, or in any proceeds of any of the foregoing, or entitle the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF to assert any priority or superpriority claims or rights to such Specified Kaijet Products or any accounts receivable generated by such Specified Kaijet Products, or in any proceeds of any of the foregoing, pending a judicial determination or consensual resolution of the competing claims of all parties, including, but not limited to, Kaijet, the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders, Fitbit, WFCDF, and the Debtors, to such Specified Kaijet Products or any proceeds thereof.

h.      FixMeStick Technologies, Inc. ("**FixMeStick**") and certain Debtors are party to a certain distribution agreement (including any amendments, supplements, modifications or riders, the "**FixMeStick Distribution Agreement**") as to certain products delivered by FixMeStick (any products delivered pursuant to such FixMeStick Distribution Agreement, the "**Specified FixMeStick Products**").  Nothing contained in this Order shall have any effect on (i) the determination of whether the consignment arrangement set forth in the FixMeStick Distribution Agreement is a true consignment agreement; (ii) who is the owner of the Specified FixMeStick Products; or (iii) the extent, validity, and priority of FixMeStick FixMeStick's rights and interests in or to, or ownership of, the Specified FixMeStick Products, or any accounts receivable generated by such Specified FixMeStick Products, or any proceeds of any of the foregoing, which rights are hereby specifically reserved by all parties.  For the avoidance of doubt, nothing contained in this Order will grant Postpetition Lenders, the

-28-

Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF any liens or security interests (whether as priming liens, as junior liens, as adequate protection liens, or otherwise) in the Specified FixMeStick Products or in any accounts receivable generated by such Specified FixMeStick Products, or in any proceeds of any of the foregoing, or entitle the Postpetition Lenders, the Prepetition Senior Lenders, the Postpetition Agent, the Prepetition Senior Agent, Fitbit, or WFCDF to assert any priority or superpriority claims or rights to such Specified FixMeStick Products or any accounts receivable generated by such Specified FixMeStick Products, or in any proceeds of any of the foregoing, pending a judicial determination or consensual resolution of the competing claims of all parties, including, but not limited to, FixMeStick, the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, Postpetition Lenders, Fitbit, WFCDF, and the Debtors, to such Specified FixMeStick Products or any proceeds thereof.

11.    <u>Super-Priority Claim</u>.    In addition to the Postpetition Liens, the Postpetition Agent and Postpetition Lenders are hereby granted, for all Postpetition Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "**<u>Super-Priority Claim</u>**") against each Debtor and its respective estate. Except for the Carve-Out, the Super-Priority Claim shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or <u>pari</u> <u>passu</u> with, the Super-Priority Claim), including those specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise.

12.    <u>No Reduction or Impairment</u>.  No obligation or liability owed, or payment, transfer or grant of security, to Postpetition Agent or any Postpetition Lender under this Order or any other Postpetition Loan Document shall be stayed, restrained, voidable, impaired, or

ATL22340958

CORE/9990000.2173/135245957.1

recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Chapter 11 Cases or any Successor Case.   Subject to <u>paragraph 31</u> below, the release of claims by the Debtors against the Postpetition Agent and the Postpetition Lenders (and other applicable parties) set forth in the Postpetition Credit Agreement is hereby approved.   The Postpetition Obligations, once paid by any Debtor, shall be non-refundable.

-30-

13.    <u>Carve-Out</u>.

a.    <u>Generally</u>.  Notwithstanding anything to the contrary contained in this Order, but subject to Paragraph 19 of this Order, the liens and claims granted to any of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, Prepetition Senior Lenders or Fitbit in this Order, the Postpetition Loan Documents, and/or the Prepetition Senior Loan Documents shall be subject to the payment, without duplication, of the following fees and claims (collectively, the "**<u>Carve-Out</u>**"), but only to the extent that there are not sufficient, unencumbered funds in the Debtors' estates to pay such amounts at the time payment is required to be made:

(i)    with respect to claims incurred prior to the Carve-Out Trigger Date, the claims of (x) professionals of the Debtors whose retention is approved by this Court during the Chapter 11 Cases pursuant to Sections 327 and 328 of the Bankruptcy Code (the "**<u>Debtors' Professionals</u>**") for unpaid fees and expenses which were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date; and (y) professionals of any statutory committees appointed in the Chapter 11 Cases whose retention is approved by this Court during the Chapter 11 Cases pursuant to Section 1103 of the Bankruptcy Code (the "**<u>Committee's Professionals</u>**" and together with the Debtors' Professionals, the "**<u>Retained Professionals</u>**") for unpaid fees and expenses which were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date; <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals (A) are ultimately allowed on a final basis by this Court under Sections 330 and 331 of the Bankruptcy Code, (B) comply with the following professional fee budget, which is also approved in writing by the Postpetition Agent (such budget, the "**<u>Second Professional Fee Budget</u>**"), which amounts are in addition to those amounts funded pursuant to the first Professional Fee Budget (as defined in the First Interim Order), with those amounts funded under the first Professional Fee Budget afforded those protections set forth in the First Interim Order and this Order:

| *Week* | *4* | *5* | *6* | *7* |
|---|---|---|---|---|
| Week ending | 8-Oct | 15-Oct | 22-Oct | 29-Oct |
| | | | | |
| ***ESTATE PROFESSIONALS*** | | | | |
| Estate Professional Fees - Incurred | | | | |
| Conway Mackenzie | $    150,000 | $    150,000 | $    75,000 | $    60,000 |
| Stinson Leonard Street | 110,000 | 110,000 | 75,000 | 60,000 |
| Canadian Counsel | 15,000 | 15,000 | 15,000 | 15,000 |
| UCC Professionals | 50,000 | 50,000 | 50,000 | 50,000 |
| Canadian Information Officer | - | 15,000 | 15,000 | 15,000 |

-31-

| Total Estate Professional Fees - Incurred | $ | 325,000 | $ | 340,000 | $ | 230,000 | $ | 200,000 |
|---|---|---|---|---|---|---|---|---|

(C) are not excluded from the Carve-Out under <u>paragraph 30</u> of this Order, and (D) do not exceed $1,723,000 in the aggregate for all of the Retained Professionals (such fees and expenses, the "**Pre-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Pre-Carve-Out Trigger Date Amount**").  Notwithstanding anything herein to the contrary, the Pre-Carve-Out Trigger Date Amount shall be allocated on a pro rata basis among the Retained Professionals, based upon the ratio of the aggregate dollar amount of fees for a Retained Professional as set forth in the Professional Fee Budget (as defined in the First Interim Order) and the Second Professional Fee Budget as compared to the aggregate dollar amount of all incurred fees for all Retained Professionals as set forth in the Professional Fee Budget (as defined in the First Interim Order) and the Second Professional Fee Budget;

(ii)     with respect to claims incurred on or after the Carve-Out Trigger Date (as defined herein), the claims of Retained Professionals for unpaid fees and expenses which were incurred on and after the Carve-Out Trigger Date; <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals (A) are ultimately allowed on a final basis by this Court under Sections 330 and 331 of the Bankruptcy Code, (B) are not excluded from the Carve-Out under <u>paragraph 30</u> of this Order, and (C) do not exceed $50,000 in the aggregate for all of the Retained Professionals (such fees and expenses, the "**Post-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Post-Carve-Out Trigger Date Amount**" and, together with the Pre-Carve-Out Trigger Date Amount, the "**Carve-Out Amount**"); and

(iii)     unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the United States Code.

b.     <u>Carve-Out Trigger Date</u>.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Postpetition Agent provides written notice to the Debtors that the Carve-Out is invoked, which notice shall be delivered only on or after (i) the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement or the Commitment Termination Date, and (ii) the termination of the Postpetition Agent's or Postpetition Lenders' obligations to make loans or provide other extensions of credit under the Postpetition Credit Agreement.

c.     <u>Carve-Out Trigger Date Amounts</u>.  Subject to the terms and conditions of this Order and the Postpetition Loan Documents, the Debtors shall be permitted,

during the time period prior to the Carve-Out Trigger Date, to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under Sections 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable, that constitute Pre-Carve-Out Trigger Date Expenses and such payments shall not reduce or be deemed to reduce the Pre-Carve-Out Trigger Date Amount or the Post-Carve-Out Trigger Date Amount.  On and after the Carve-Out Trigger Date, the dollar amounts available to be paid under the Carve-Out Amount shall be reduced, dollar-for-dollar, by the aggregate amount of payments made to the Retained Professionals on account of their Pre-Carve-Out Trigger Date Expenses or Post-Carve-Out Trigger Date Expenses (whether from Cash Collateral, any proceeds of the Postpetition Facility, or otherwise).

          d.      <u>Reservation of Rights</u>.  Payment of any fees and expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit, and/or WFCDF or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral, Prepetition Senior Collateral, the Fitbit Collateral, or the WFCDF Collateral (or their respective claims against the Debtors).  The Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit, and WFCDF shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals (or of any other Person) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in this Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any Retained Professional or any other Person, or to ensure that any Debtor has sufficient funds to pay such compensation or reimbursement.  Nothing herein shall impair, or be construed to impair, the ability of any

ATL22340958

CORE/9990000.2173/135245957.1

party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals.

e.    <u>Professional Fee Escrow</u>.  In the sole discretion of the Postpetition Agent, the Postpetition Agent may advance funds under the Postpetition Loan Documents and this Order to fund the Professional Fee Budget set forth in Paragraph 13(a)(i) of this Order and Paragraph 13(a)(i) of the First Interim Order to the Debtors' counsel for deposit into an escrow account maintained by Debtors' counsel and any such funds so advanced shall be deemed Postpetition Obligations (the "<u>Escrowed Funds</u>").  Debtors' counsel shall be authorized to remit any such Escrowed Funds to the Retained Professionals, in accordance with the Professional Fee Budget, as the fees and expenses of the Retained Professionals are allowed by order of this Court.  The Escrowed Funds shall reduce, on a dollar for dollar basis, the Carve-Out Amount.  In addition, to the extent that the Postpetition Agent has deposited Escrowed Funds with Debtors' counsel, upon the occurrence of a Carve-Out Trigger Date, the Postpetition Lenders shall only be obligated to fund the difference of the Carve-Out Amount and the Escrowed Funds with any excess Escrowed Funds to be immediately remitted to the Postpetition Agent.  Upon allowance of all fees and expenses of Retained Professionals on a final basis, if there remains any Escrowed Funds, such remaining Escrowed Funds shall be immediately remitted to the Postpetition Agent.

14.    <u>Cash Collection Procedures</u>.

a.    <u>Generally</u>.  From and after the date of the entry of this Order, all collections and proceeds of any Postpetition Collateral or Prepetition Senior Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Senior Collateral were deposited under the Prepetition

-34-

Senior Credit Agreement (or in such other accounts as are designated by Postpetition Agent from time to time), and such collections and proceeds upon such deposit shall be applied, subject to the Carve-Out and any Prior Liens, against the Postpetition Obligations and Prepetition Senior Obligations as provided in the Postpetition Loan Documents and this Order.  The Debtors shall promptly enter into any additional agreements providing for the establishment of lock boxes, blocked accounts, or similar arrangements in favor of the Postpetition Agent for purposes of facilitating cash collections from the Debtors in accordance with the terms of the Postpetition Credit Agreement and this Order.

b. <u>Existing Accounts</u>.  The Prepetition Senior Agent and the Prepetition Senior Lenders shall immediately share dominion and control with the Postpetition Agent with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement or similar agreement with or in favor of any of the Prepetition Senior Agent or the Prepetition Senior Lenders as of the Petition Date, and such agreements shall hereafter be additionally enforceable by the Postpetition Agent against, and binding upon, each depository institution party thereto until the Postpetition Obligations have been paid in full in cash and the Postpetition Credit Agreement shall have been terminated, after which such agreements shall again be solely enforceable by the Prepetition Senior Agent and the Prepetition Senior Lenders, as applicable.

c. <u>Cash Collateral Account; Application of Cash Collateral</u>.  All funds received by Prepetition Senior Agent or Postpetition Senior Agent as Letter of Credit Collateralization with respect to any of the Letters of Credit issued under (and as defined in) the Prepetition Senior Credit Agreement or under (and as defined in) the Postpetition Credit Agreement (each such Letter of Credit, a "**<u>Senior Letter of Credit</u>**"; such funds, "**<u>Senior LC</u>** **<u>Cash Collateral</u>**"), shall be deposited into a bank account in the name of Postpetition Agent and maintained by Wells Fargo (the "**<u>Senior LC Cash Collateral Account</u>**").  Following the

-35-

expiration or termination of any Senior Letter of Credit and the payment and satisfaction of all

Prepetition Senior Obligations and Postpetition Obligations with respect to such Senior Letter of

Credit and the expiration or termination of all outstanding Senior Letters of Credit, the portion (if

any) of Senior LC Cash Collateral then held in the Senior LC Cash Collateral Account based on

such expired or terminated Senior Letter of Credit (the amount of such portion to be determined

in accordance with the definition of Letter of Credit Collateralization set forth in the Prepetition

Senior Credit Agreement and Postpetition Credit Agreement (as applicable)) shall be applied by

Postpetition Agent in accordance with the terms of the Postpetition Credit Agreement and this

Order.

15.     <u>Non-Ordinary Course Dispositions</u>.

a.     The Debtors shall comply in all respects with the liquidation

process covenants and deadlines set forth the Postpetition Credit Agreement, for which time is of

the essence, including, without limitation, the following:

(i)     On or before October 2, 2017, the Debtors must file a
motion to approve sale and bidding procedures with the Court together with (A) a committed
asset purchase agreement, in form and substance acceptable to the Postpetition Agent, to
purchase substantially all of the Inventory (as defined in the Postpetition Credit Agreement) of
the Borrowers from a purchaser satisfactory to the Postpetition Agent (such purchaser, the
"**Inventory Stalking Horse Bidder**"; such committed asset purchase agreement, the "**Inventory
Stalking Horse Bid**") for an amount acceptable to the Postpetition Agent (the "**Minimum
Inventory Purchase Price**"), in cash at closing, signed by the Inventory Stalking Horse Bidder
and the Debtors, with no material conditions to close (including any financing contingency),
except for an order of the Court approving the sale, and (B) a committed asset purchase
agreement, in form and substance acceptable to the Postpetition Agent, to purchase substantially
all of the Equipment (as defined in the Postpetition Credit Agreement) and related assets of the
Debtors not subject to a Prior Lien from a purchaser satisfactory to Postpetition Agent (such
purchaser, the "**Equipment Stalking Horse Bidder**"; such committed asset purchase agreement,
the "**Equipment Stalking Horse Bid**") for an amount acceptable to Postpetition Agent (the
"**Minimum Equipment Purchase Price**"), in cash at closing, signed by the Equipment Stalking
Horse Bidder and the Loan Parties, with no material conditions to close (including any financing
contingency), except for an order of the Court approving the sale;

(ii)     The Debtors shall have obtained the Court's approval of
(A) Inventory Stalking Horse Bid which must provide for payment of the Minimum Inventory

-36-

Purchase Price, and (B) the Equipment Stalking Horse Bid, which Equipment Stalking Horse Bid must provide for payment of the Minimum Equipment Purchase Price, no later than October 12, 2017;

(iii)    The final auction of the assets covered by the Inventory Stalking Horse Bid and the Equipment Stalking Horse Bid shall be held no later than October 17, 2017;

(iv)    The Debtors shall have caused the Court to grant the Sale Motion no later than October 20, 2017; and

(v)    The closing and funding of (A) the sale described in the Inventory Stalking Horse Bid (including the receipt by Postpetition Agent and Prepetition Senior Agent of the Minimum Inventory Purchase Price) must occur no later than October 23, 2017, and (B) the sale described in the Equipment Stalking Horse Bid (including the receipt by Postpetition Agent and Prepetition Senior Agent of the Minimum Equipment Purchase Price) must occur no later than October 23, 2017.

b.    The respective rights of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent and Prepetition Senior Lenders to credit bid all or any portion of the Postpetition Obligations and Prepetition Senior Obligations (as applicable) under Section 363(k) of the Bankruptcy Code and other applicable law in connection with any proposed sale of Prepetition Senior Collateral or Postpetition Collateral (other than the sale of Inventory in the ordinary course of any Debtor's business), or to object to such proposed sale or other Asset Disposition, shall be preserved through the closing of such sale or other Asset Disposition. Any and all proceeds arising from or in connection with any sale or lease of Postpetition Collateral or Prepetition Senior Collateral, or other Asset Disposition, including proceeds arising from or in connection with any Asset Disposition described in the Postpetition Credit Agreement, shall, subject to the terms of the Postpetition Loan Documents, be immediately transferred to Postpetition Agent or Prepetition Senior Agent (as applicable) for application to, or cash collateralization of, the Postpetition Obligations or Prepetition Senior Obligations in accordance

ATL22340958

CORE/9990000.2173/135245957.1

with the terms and conditions of the Postpetition Loan Documents and Prepetition Senior Loan

Documents (in each case, as applicable).

16.    <u>Landlord Agreements</u>.    All landlord agreements to which either

Prepetition Agent is a party shall be deemed amended to include the Postpetition Agent as a

beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the

Postpetition Agent against, and binding upon, each landlord party thereto in accordance with,

and subject to, its respective terms and conditions until the Postpetition Obligations shall have

been paid in full in cash and the Postpetition Credit Agreement shall have been terminated, after

which such agreements shall again be solely enforceable by the applicable Prepetition Agent.

17.    <u>Adequate Protection Senior Obligations</u>.    Until the indefeasible repayment

in full in cash of the Prepetition Senior Obligations and the expiration of the Complaint Filing

Deadline (or resolution of any complaint or adversary proceeding described in <u>paragraph 31</u> of

this Order), as adequate protection for the Prepetition Senior Agent's interest in the Prepetition

Senior Collateral, the Prepetition Senior Agent and Prepetition Senior Lenders are hereby

granted the following:

a.    <u>Replacement Liens</u>.    Pursuant to Sections 361(2), 362, 363(c)(2),

and 363(e) of the Bankruptcy Code, the Prepetition Senior Agent, for its benefit and the benefit

of the Prepetition Senior Lenders, is hereby granted by each Debtor continuing valid, binding,

enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral

(the "**<u>Adequate Protection Senior Liens</u>**").  The Adequate Protection Senior Liens shall (i) be

subordinate only to: (A) the Carve-Out, (B) the Postpetition Liens, and (C) the Prior Liens

(including the WFCDF Liens in the Excluded Inventory Collateral); and (ii) be senior and

superior to the Subordinate Liens and Related Rights and, pursuant to the Prepetition

Intercreditor Agreements, senior and superior to the Fitbit Junior Liens, the Fitbit Adequate

Protection Liens, the WFCDF Junior Liens, and the WFCDF Adequate Protection Liens (except

-38-

as otherwise provided in <u>paragraph 19</u> of this Order).  The Adequate Protection Senior Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Except as described in clause (i) above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or <u>pari</u> <u>passu</u> with the Adequate Protection Senior Liens in these Chapter 11 Cases or any Successor Case without the prior written consent of the Prepetition Senior Agent given in accordance with the Prepetition Senior Credit Agreement (which consent may be withheld in its sole discretion).

b.      <u>Adequate Protection Senior Claim</u>.  Pursuant to Section 507(b) of the Bankruptcy Code, the Prepetition Senior Agent and the Prepetition Senior Lenders shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Senior Claim**") against each Debtor and its respective estate.  The Adequate Protection Senior Claim shall: (i) be subordinate only to: (A) the Carve-Out, and (B) the Super-Priority Claim; and (ii) be senior and superior to the Subordinate Claims and Related Rights.  Except as described in clause (i) above, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or <u>pari</u> <u>passu</u> with, the Adequate Protection Senior Claim.

c.      <u>Adequate Protection Payments</u>.  As further adequate protection, subject to the rights set forth in <u>paragraph 31</u> hereof, and without limiting any rights of the Prepetition Senior Agent and the Prepetition Senior Lenders under Section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Senior Agent and Prepetition Senior Lenders to the entry of this Order and the Debtors' consensual use of Cash Collateral as provided herein, (i) the proceeds of any Prepetition Senior Collateral and any Postpetition Collateral shall be paid to

ATL22340958

CORE/9990000.2173/135245957.1

Prepetition Senior Agent and Prepetition Senior Lenders for application to the Prepetition Senior Obligations until such Prepetition Senior Obligations are paid in full and Letter of Credit Collateralization (as defined in the Prepetition Senior Credit Agreement) with respect to all outstanding Letters of Credit (as defined in the Prepetition Senior Credit Agreement) has occurred, (i) Debtors shall make all payments of interest as and when due under the Prepetition Senior Credit Agreement, and (ii) the Debtors shall, on the Closing Date and on a monthly basis thereafter, pay or reimburse the Prepetition Senior Agent and Prepetition Senior Lenders for any and all of its accruing, and accrued and past-due, fees, costs, expenses and charges payable under the Prepetition Senior Loan Documents, including without limitation, the reasonable attorneys' and other fees and expenses of the Prepetition Senior Agent and Prepetition Senior Lenders as provided in the Prepetition Senior Credit Agreement, whether accrued prepetition or postpetition, all without further notice, motion or application to, order of, or hearing before, this Court.

d.      <u>Adequate Protection Senior Obligations</u>.  The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall secure the payment of the Prepetition Senior Obligations in an amount equal to any diminution in the value of the Prepetition Senior Agent's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**<u>Adequate Protection Senior Obligations</u>**") including, without limitation, any such diminution resulting from (i) the use by the Debtors of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise, or (v) costs and fees incurred in connection with the Prepetition Senior Loan Documents.

e.     <u>Prepetition Senior Liens</u>.  None of the Prepetition Senior Liens shall be released unless and until (i) the Prepetition Senior Obligations have been indefeasibly paid in full in cash or Letter of Credit Collateralization (as defined in the Prepetition Senior Credit Agreement) has occurred (as applicable), (ii) the Prepetition Senior Agent and Prepetition Senior Lenders have received a release of any and all claims from each of the Debtors in form and substance acceptable to the Prepetition Senior Agent and Prepetition Senior Lenders, (iii) the Complaint Filing Deadline has occurred and all claims filed against any of the Prepetition Senior Agent and Prepetition Senior Lenders have been resolved, and (iv) the Prepetition Senior Agent and Prepetition Senior Lenders have been reimbursed in full for all liability, fees, costs, and expenses incurred in connection with any claims filed against any of them in connection with the Prepetition Senior Loan Documents.

18.     <u>Adequate Protection Fitbit Obligations</u>.  To the extent that Fitbit has a valid claim for diminution in the value, if any, of Fitbit's interests in the Fitbit Collateral from and after the Petition Date (the amount of such diminution, the "**<u>Adequate Protection Fitbit Obligations</u>**"), and subject to the rights of any party in interest to challenge the extent, validity, and priority of Fitbit's claims against the Debtors and/or the Fitbit Junior Liens, Fitbit is hereby granted replacement liens and security interests in any Postpetition Collateral consisting of same types of assets that were encumbered by the Fitbit Junior Liens to the extent that the Fitbit Junior Liens are not subject to avoidance and were valid and enforceable as of the Petition Date (such replacement liens, the "**<u>Adequate Protection Fitbit Liens</u>**").  The Adequate Protection Fitbit Liens shall be junior and subordinate to the Prepetition Senior Liens, the Adequate Protection Senior Liens, and the Carve-Out.

19.     <u>Adequate Protection WFCDF Obligations</u>.  To the extent that WFCDF has a valid claim for diminution in the value, if any, of WFCDF's interests in the WFCDF Collateral

-41-

from and after the Petition Date (the amount of such diminution, the "**Adequate Protection**

**WFCDF Obligations**"), and subject to the rights of any party in interest to challenge the extent,

validity, and priority of WFCDF's claims against the Debtors and/or the WFCDF Liens, WFCDF

is hereby granted replacement liens and security interests in any Postpetition Collateral

consisting of same types of assets that were encumbered by the WFCDF Liens, but only to the

extent that the WFCDF Liens are not subject to avoidance and were valid and enforceable as of

the Petition Date (such replacement liens, the "**Adequate Protection WFCDF Liens**").  Other

than with respect to the Adequate Protection WFCDF Liens on the Excluded Inventory

Collateral, which liens are senior to the Prepetition Senior Liens, the Adequate Protection Senior

Liens, and the Carve-Out, the Adequate Protection WFCDF Liens shall be junior and

subordinate to the Prepetition Senior Liens, the Adequate Protection Senior Liens, and the

Carve-Out.

   20. <u>Collections</u>.  Notwithstanding anything in this Order to the contrary, any

and all claims and liens of the Prepetition Senior Agent and Prepetition Senior Lenders arising

with respect to or in connection with this Order or the Prepetition Senior Loan Documents (the

"**Superior Senior Obligations**"), including, without limitation, the Prepetition Senior

Obligations, Prepetition Senior Liens, Adequate Protection Senior Obligations, and Adequate

Protection Senior Claim, must and shall be indefeasibly paid and satisfied in full in cash and

Letter of Credit Collateralization shall have occurred as to all outstanding Senior Letters of

Credit issued under the Prepetition Senior Credit Agreement, before any payment or distribution,

whether pursuant to a chapter 11 plan, setoff or otherwise, may or can be made to or retained by

the Postpetition Agent or any of the Postpetition Lenders (in their respective capacities as such)

arising with respect to or in connection with this Order and/or the Postpetition Loan Documents

(collectively, the "**Subordinate Senior Obligations**").  Any payment or distribution, whether in

cash, securities or other property, which would otherwise, but for the terms hereof, be payable or deliverable to Postpetition Agent or any Postpetition Lender in respect of or in connection with any Subordinate Senior Obligations shall be paid or delivered directly to the Prepetition Senior Agent (to be held and/or applied by Prepetition Senior Agent in accordance with the terms of this Order and the Prepetition Senior Credit Agreement) until all Superior Senior Obligations are indefeasibly paid and satisfied in full in cash and Letter of Credit Collateralization has occurred with respect to all outstanding Senior Letters of Credit issued under the Prepetition Senior Credit Agreement.

21.     <u>Waiver of Section 506(c) Claims</u>.  No costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity shall be imposed against the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, or Prepetition Senior Lenders, their respective claims or the Prepetition Senior Collateral or Postpetition Collateral under Section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby irrevocably waive any and all such rights, remedies and benefits under Section 506(c) of the Bankruptcy Code.

22.     <u>Other Waivers</u>.  Except for the Carve-Out and Prior Liens, no claim or lien having a priority superior to or <u>pari passu</u> with those granted pursuant to this Order to the Postpetition Agent, the Postpetition Lenders, the Prepetition Senior Agent and the Prepetition Senior Lenders, respectively, shall be granted or allowed while any portion of the Postpetition Facility (or any refinancing thereof), the Commitments (as defined in the Postpetition Credit Agreement) thereunder, the Postpetition Obligations, or the Adequate Protection Senior Obligations remain outstanding.  Except as expressly permitted by the Postpetition Credit Agreement, unless consented to in writing by the Postpetition Agent, no Debtor shall seek entry of any further orders in its Chapter 11 Case which authorize (a) under Bankruptcy Code Section 363, the use of Cash Collateral; (b) the obtaining of credit or the incurring of indebtedness

pursuant to Bankruptcy Code Sections 364(c) or 364(d), (c) the return of goods pursuant to Bankruptcy Code Section 546(h) to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to Bankruptcy Code Section 553 or otherwise, or (d) the granting of mortgages, security interests, or liens in the Postpetition Collateral to any parties other than the Postpetition Agent and Postpetition Lenders pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

23.     Automatic Perfection.

a.     The Postpetition Liens, the Adequate Protection Senior Liens, the Adequate Protection Fitbit Liens, and the Adequate Protection WFCDF Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further notice, act or action of or by any Person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  If the Postpetition Agent, the Senior Prepetition Agent, Fitbit or WFCDF hereafter requests that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Order, then the Debtors are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Postpetition Agent, Prepetition Senior Agent, Fitbit, and WFCDF (as applicable) are hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order, but with the priorities as set forth herein.  The Postpetition Agent, Prepetition Senior Agent, Fitbit,

-44-

and WFCDF may (in their respective sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

b.      To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Order or the Postpetition Loan Documents, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court; provided that the Postpetition Agent, Prepetition Senior Agent, Fitbit, and WFCDF may still take such steps as they wish to perfect their respective security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order.

24.      Default Under Other Documents.  The Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders, the Prepetition Senior Lenders, Fitbit, and WFCDF shall have all rights and remedies with respect to the Debtors and any other rights, remedies, benefits and privileges as are set forth in this Order, the Postpetition Loan Documents, the Prepetition Senior Loan Documents the Fitbit Security Documents, and the WFCDF Security Documents (as applicable).  Except as otherwise expressly provided herein, no provision contained in any prepetition or postpetition agreement to which any Debtor is a party, or under which any Debtor is obligated or bound, that restricts, conditions, prohibits, limits or impairs in any way any Debtor from (a) granting the Postpetition Agent, the Prepetition Senior Agent, the Postpetition

Lenders, the Prepetition Senior Lenders, Fitbit, and WFCDF the postpetition security interests or liens upon any of its assets, or (b) otherwise entering into and complying with all of the terms, conditions and provisions of this Order and Postpetition Loan Documents, shall be enforceable against such Debtor.

25.     <u>Successors and Assigns</u>.  The provisions of this Order and the Postpetition Loan Documents shall, as applicable, be binding upon and inure to the benefit of the Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders, the Prepetition Senior Lenders, Fitbit, WFCDF, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case.

26.     <u>Survival</u>.  The provisions of this Order and any actions taken pursuant thereto: (a) shall survive the entry of any order: (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (ii) substantively consolidating any of the Debtors or their respective estates; or (iii) dismissing or closing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order.

27.     <u>Section 364(e); Effect of Modification or Appeal</u>.  Based on the findings set forth in this Order, in consideration for the financing provided under Postpetition Facility, the Postpetition Agent and the Postpetition Lenders are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, Section 364(e) of the Bankruptcy Code with respect to the Postpetition Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by this Order in the event that this Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or

ATL22340958

CORE/9990000.2173/135245957.1

security interest of the Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders, or the Prepetition Senior Lenders authorized, created or granted pursuant to the First Interim Order or this Order and outstanding immediately prior to the actual receipt of written notice by the Postpetition Agent and Prepetition Senior Agent of the effective date of such stay, modification, reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations and other financial accommodations made pursuant to this Order, all Postpetition Obligations incurred and uses of Cash Collateral permitted by the Debtors pursuant hereto prior to the actual receipt of written notice by the Postpetition Agent and Prepetition Senior Agent of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of the First Interim Order and this Order and the Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders, and the Prepetition Senior Lenders shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted in Section 364(e) of the Bankruptcy Code, the Postpetition Loan Documents, the First Interim Order, and this Order (as applicable), including, without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Liens, and Adequate Protection Senior Claims.

28.   <u>Modification of Automatic Stay; Other Remedies</u>.

a.   Subject to <u>sub-paragraph (c)</u> below, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Postpetition Agent and Postpetition Lenders to the extent necessary to permit them to perform in accordance with, provide any notice under, and exercise, enjoy and enforce their respective rights, benefits, privileges and remedies pursuant to this Order and the other Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. Subject to <u>sub-paragraph (c)</u> below, regardless of any change in circumstances (whether or not foreseeable), neither Section 105 of the Bankruptcy Code nor any other provision of the

-47-

Bankruptcy Code or applicable law shall be utilized to prohibit the Postpetition Agent's or Postpetition Lenders' exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies as and to the extent provided in this Order.

b.      Subject to sub-paragraph (c) below, the Postpetition Agent and Postpetition Lenders are hereby authorized and granted leave from the automatic stay under Section 362 of the Bankruptcy Code to do the following on and after the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement (or otherwise on and after the Commitment Termination Date), in each case, upon the filing of a notice of any such Event of Default with the Court (which notice shall be delivered to the Debtors, counsel for the Creditors' Committee, and the US Trustee), but otherwise without further notice, motion or application to, order of, or hearing before, this Court:

(i)      terminate any obligation of Postpetition Agent or Postpetition Lenders to make loans or other extensions of credit under the Postpetition Loan Documents or this Order;

(ii)     declare all Postpetition Obligations immediately due and payable in full in cash, and require that all letters of credit and other contingent obligations related thereto, if any, to be cash collateralized or terminated without liability to Postpetition Agent or Postpetition Lenders; and

(iii)    revoke the Debtors' right, if any, under this Order and/or the other Postpetition Loan Documents to use Cash Collateral.

c.      The entirety of this Paragraph 28(c) is subject to the entry of a Final Order. On and after the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement (or otherwise on and after the Commitment Termination Date), and after obtaining Court approval upon notice and hearing, the Postpetition Agent, the Postpetition Lenders, the Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit, and WFCDF shall be entitled to foreclose or otherwise enforce their respective liens on any or all of the Postpetition Collateral and/or to exercise any other default-related rights and remedies under

-48-

the Postpetition Loan Documents, Prepetition Senior Loan Documents, the Fitbit Security Documents, the WFCDF Security Documents, the First Interim Order, this Order, and applicable law to the extent not already permitted pursuant to sub-paragraph (b) above, in each case, subject to the terms of the Prepetition Intercreditor Agreements (as applicable). The parties shall use their best efforts to schedule and attend an expedited Court hearing within three (3) business days of notice of the Event of Default or Commitment Termination Date being given to the Debtors. The Debtors acknowledge and agree, and this Court hereby orders, that the only issue to be determined and decided at any Court hearing regarding such matters is whether an Event of Default has occurred and is continuing under the Postpetition Credit Agreement or whether the Commitment Termination Date has occurred and notice of such hearing need only be given to the Debtors, any statutory committee of unsecured creditors and the U.S. Trustee.

29.     No Waiver of Rights.

a.     Generally.   Without limiting the terms and conditions of paragraphs 9 through 12 and 20 of this Order, none of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit, or WFCDF waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of the Prepetition Senior Loan Documents, the Postpetition Loan Documents, any inter-creditor or subordination agreement, the Bankruptcy Code and/or under applicable law against or with respect to any Debtor and any other Person or entity.

b.     Relative Priorities.   Pursuant to Section 510 of the Bankruptcy Code, any inter-creditor or subordination agreement between and/or among the Prepetition Senior Agent, any Prepetition Senior Lender, any Debtor and any other non-Debtor party thereto, and any other applicable inter-creditor or subordination provisions contained in any credit agreement, security agreement, indenture or related document, remain in full force and effect and are not amended, altered or modified by the terms of this Order or the Postpetition Loan

-49-

Documents.  Nothing in this Order or the Postpetition Loan Documents shall, or shall be deemed to, alter, amend, modify, impair, diminish or otherwise affect the terms and conditions of the Prepetition Intercreditor Agreements, which terms and conditions remain in full force and effect as between or among the parties thereto.

        c.     Additional Rights Preserved.  Without limiting the generality of this paragraph 29, the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit (subject to the terms of the Prepetition Fitbit Intercreditor Agreement), and WFCDF (subject to the terms of the Prepetition WFCDF Intercreditor Agreements) may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the Prepetition Senior Obligations, the Postpetition Obligations, the Fitbit Obligations, the WFCDF Obligations, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Senior Collateral, the Fitbit Collateral, or the WFCDF Collateral (as applicable). Except as otherwise set forth herein, entry of this Order shall not in any way constitute agreement, consent, or acquiescence by the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, Prepetition Senior Lenders, Fitbit (subject to the terms of the Prepetition Fitbit Intercreditor Agreement), or WFCDF (subject to the terms of the Prepetition WFCDF Intercreditor Agreements) to the terms of any plan of reorganization filed in the Chapter 11 Cases.

        30.     Restriction on Use of Lenders' Funds.  No portion of the Postpetition Facility, the Postpetition Collateral, the Prepetition Senior Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims, actions or causes of action against or adverse to the interests of any of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, or Prepetition Senior

Lenders, including, without limitation, any action challenging or raising any defenses to the Postpetition Obligations, the Prepetition Senior Obligations, the Postpetition Liens, or the Prepetition Senior Liens; <u>provided</u>, that no more than $25,000 in the aggregate of the proceeds of the Postpetition Facility or the Postpetition Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate the Prepetition Senior Obligations and the Prepetition Senior Liens.

31.     <u>Release of Claims Against Prepetition Senior Agent and Prepetition Senior Lenders</u>.  The stipulations and admissions contained in <u>Paragraph D(a)</u> of this Order, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee, unless, and solely to the extent that, (a) the Creditors' Committee, or another party in interest, has timely filed a complaint and commenced an adversary proceeding (subject to the limitations set forth in <u>paragraph 30</u> of this Order) challenging the amount, extent, validity, or enforceability of the Prepetition Senior Obligations, or the perfection or priority of the Prepetition Senior Liens, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Prepetition Senior Agent or the Prepetition Senior Lenders relating to the Prepetition Senior Obligations, in each case no later than the earlier of (x) sixty (60) days after the date of appointment of the Creditors' Committee or (y) ninety (90) days after the Petition Date (such earlier date, the "**Complaint Filing Deadline**"), and (b) this Court rules in favor of the plaintiff in any such timely and properly commenced adversary proceeding.  If no such adversary proceeding is timely and properly commenced by the Complaint Filing Deadline, or to the extent such adversary proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the acknowledgments of the Debtors contained in <u>paragraph D(a)</u> of this Order, then, without the requirement or need to file any proof of claim with respect thereto and without further notice, motion or application to, order of, or hearing before, this Court, but in all cases subject <u>paragraph 29</u> of this Order, the acknowledgments of the Debtors contained in <u>paragraph</u>

-51-

D(a) of this Order with respect to the Prepetition Senior Agent, Prepetition Senior Lenders, Prepetition Senior Loan Documents, Prepetition Senior Liens, Prepetition Senior Obligations, and Prepetition Senior Collateral shall be binding, conclusive and final on the Creditors' Committee and any other Person, entity or party-in-interest in the Chapter 11 Cases and any Successor Case and (i) the claims, liens and security interests of the Prepetition Senior Agent and the Prepetition Senior Lenders shall be deemed to be finally allowed for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case in the event any of the Chapter 11 Cases are converted, and shall not be subject to challenge by any party in interest as to validity, priority or otherwise, and (ii) the Debtors and their estates shall be deemed to have forever released any and all claims or causes of action against the Prepetition Senior Agent and the Prepetition Senior Lenders with respect to the Prepetition Senior Loan Documents, or any related transactions. Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely commenced, the stipulations contained in paragraph D(a) hereof shall nonetheless remain binding on all parties in interest and preclusive (as provided in the second sentence of this paragraph 31) except to the extent that such stipulations are expressly challenged in such adversary proceeding.  Nothing contained in this Order shall in any way limit the rights of any party in interest, including, without limitation, any of the Debtors or any Committee, (x) to investigate the extent, validity, or priority of Fitbit's and/or WFCDF's claims against the Debtors', (y) to investigate the extent, validity, and/or priority of the Fitbit Junior Liens and/or the WFCDF Liens, and/or (z) to assert any claims against Fitbit and/or WFCDF.

32.    No Marshaling.  The Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders and the Prepetition Senior Lenders shall not be subject to the equitable doctrine of "marshaling", "election of remedies" or any other similar doctrine, or an "equities of the case" claim under Section 552(b) of the Bankruptcy Code, in each case with respect to any of its respective interests in the Postpetition Collateral and Prepetition Senior Collateral.

ATL22340958

CORE/9990000.2173/135245957.1

33.     <u>No Liability to Third Parties</u>.  In making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in approving any budget or in taking any actions permitted by this Order or the Postpetition Loan Documents, as applicable, the Postpetition Agent, the Prepetition Senior Agent, the Postpetition Lenders and the Prepetition Senior Lenders shall not (i) be deemed to be in control of the operations of any Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor, and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

34.     <u>Insurance</u>.  To the extent that Wells Fargo, in its role as Prepetition Senior Agent, is listed as loss payee under the Debtors' insurance policies, Wells Fargo, in its role as Postpetition Agent, is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in accordance with the terms and conditions of this Order and the Postpetition Loan Documents.

35.     <u>Payments Held in Trust</u>.  Except as expressly permitted in this Order or the Postpetition Loan Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any Collateral or any proceeds of Collateral or receives any other payment with respect thereto from any source prior to the indefeasible payment in full in cash of all Prepetition Senior Obligations and Postpetition Obligations, and termination of the Postpetition Facility in accordance with the Postpetition Loan Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, and Prepetition Senior Lenders and shall immediately turn over such

-53-

proceeds to the Postpetition Agent for application to the Postpetition Obligations or the Prepetition Senior Agent for application to the Prepetition Senior Obligations, or as otherwise instructed by the Court, for application in accordance with the Postpetition Loan Documents and this Order.

36.     <u>Additional Defaults</u>.  In addition and without limitation of the Events of Default set forth in and defined in the Postpetition Loan Documents, the First Interim Order or this Order, it shall be a default hereunder (and constitute an "**<u>Event of Default</u>**" under the Postpetition Credit Agreement and this Order) if (a) an order is entered dismissing or converting any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner with expanded powers, (b) a sale of substantially all assets is proposed by the Debtors without the written consent of the Postpetition Agent, Prepetition Senior Agent, Postpetition Lenders, and Prepetition Senior Lenders that would not indefeasibly pay the Prepetition Senior Obligations and Postpetition Obligations in full in cash, (c) any other motion is filed by the Debtors for any relief directly or indirectly affecting the Postpetition Collateral in a material manner unless all Prepetition Senior Obligations and Postpetition Obligations have been indefeasibly paid in final, in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby and such motion is otherwise approved of in writing by Postpetition Agent and Postpetition Lenders, (d) the Debtors fail to comply with any of the terms of, or its covenants under, this Order, the Approved Budget (subject to all applicable variances), or any stipulation or representation by the Debtors stated herein is false or misleading, or (e) at the option of the Postpetition Agent in its sole discretion, the occurrence of any Event of Default under the Postpetition Credit Agreement.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the Postpetition Agent, Prepetition Senior Agent,

-54-

Postpetition Lenders, and Prepetition Senior Lenders under this Order.  No order providing for the sale of substantially all of the assets of the Debtors under Section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the Postpetition Obligations and Prepetition Senior Obligations (in their respective priority) are transferred to the proceeds of such sale and such proceeds or are applied to permanently and indefeasibly repay the Postpetition Obligations and Prepetition Senior Obligations, as applicable, in full, in cash.  If an order dismissing any of these Chapter 11 Cases under Section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, (i) the claims, security interests, liens and claims granted to or for the benefit of the Postpetition Agent, Postpetition Lenders, Prepetition Senior Agent, and Prepetition Senior Lenders pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order, as applicable, until all Postpetition Obligations and Prepetition Senior Obligations shall have been paid and satisfied in full (and that such claims and liens, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

37.    <u>Proofs of Claim</u>.  None of the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent, or Postpetition Lenders (or any affiliates thereof in connection with any Bank Product Obligations which constitute Postpetition Obligations hereunder) will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or any Successor Cases, and the provisions of this Order relating to the amount of the Prepetition Senior Obligations and the Postpetition Obligations shall constitute timely filed proofs of claim and/or administrative expense requests in each of the Chapter 11 Cases. Notwithstanding the foregoing, Prepetition Senior Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "**Master Proof of Claim**") on behalf of

-55-

itself and the Prepetition Senior Lenders on account of their prepetition claims arising under the Prepetition Senior Loan Documents, and the Prepetition Senior Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. If the Prepetition Senior Agent so files a Master Proof of Claim against the Debtors, the Prepetition Senior Agent (on its behalf and on behalf of each Prepetition Senior Lender), and each of its successors and assigns, shall be deemed to have filed a proof of claim in the aggregate amount set forth therein in each of the Chapter 11 Cases and any Successor Case, and the claims of the Prepetition Senior Agent and each Prepetition Senior Lender (and its successors and assigns) contained in the Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in each Chapter 11 Case in the aggregate amount set forth therein. The Prepetition Senior Agent shall further be authorized to amend its Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this Paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of the Prepetition Senior Agent and the Prepetition Senior Lenders as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in Section 1126 of the Bankruptcy Code.

38.    _Final Hearing_. The Motion is set for a Final Hearing before this Court at 2:30 P.M. Central time on October 26, 2017. The objection deadline for any objection to entry of a Final Order was September 22, 2017 and no further objections may be filed to the entry of the Final Order; _provided that_ (a) the objections filed by Harman Technology, Limited [Docket No. 91], Quicken [Docket Nos. 49 and 112], McAfee [Docket Nos. 50 and 118], Vidbox [Docket Nos. 46 and 96], Sage [Docket Nos. 87 and 98], AVG [Docket No. 94], Kaiget [Docket No. 97]

ATL22340958

CORE/9990000.2173/135245957.1

and FixMeStick [Docket No. 114] shall be deemed objections to entry of a Final Order and heard at the Final Hearing; and (b) by agreement of the Debtors and the Postpetition Agent, the Creditors' Committee and Fitbit are granted extensions of the deadline to object to the entry of a Final Order to and including October 23, 2017.

Dated:     *September 27, 2017*

                              /e/ Kathleen H. Sanberg
                              KATHLEEN H. SANBERG
                              CHIEF UNITED STATES BANKRUPTCY JUDGE

*ATL22340958*

CORE/9990000.2173/135245957.1