## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER BKY 17-42726 |
| WYNIT Distribution, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |
| Debtors. | |

**NOTICE OF HEARING AND DEBTORS' MOTION FOR AN ORDER (I) GRANTING AN EXPEDITED HEARING, (II) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES, AND RELATED PROCEDURES AND BID PROTECTIONS, PURSUANT TO 11 U.S.C. § 363, AND (III) GRANTING OTHER RELATED RELIEF**

TO:    All the parties-in-interest as defined in Local Rule 2002-1(b)(2):

1.    The above-captioned debtors (the "**Debtors**" or "**WYNIT**") file this motion requesting the relief described below and give notice of hearing.

2.    PLEASE TAKE NOTICE that the Court will hold a hearing on the expedited relief and bid procedures portion of this Motion at 2:00 PM on October 4, 2017 in Courtroom 8 West, United States Court House, 300 South Forth Street, Minneapolis, MN 55415.

3.    PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the remaining portion of this motion addressing the sale of assets at 9:00 AM on October 20, 2017 in Courtroom 8 West, United States Court House, 300 South Forth Street, Minneapolis, MN 55415.

4.    The deadline to file a response to the expedited relief and bid procedures portion of this Motion is October 3, 2017 at 5:00 PM. **UNLESS A RESPONSE OPPOSING THE**

**MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

5.      The deadline to file a response to the sale of assets portion of this Motion is October 18, 2017 at 5:00 PM. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

11.      The Debtors submit this motion (the "**Sale Motion**") for an order (the "**Sale Order**"), pursuant to 11 U.S.C. § 363, and Fed. R. Bankr. P. 2002 and 6004 to approve a sale of assets free and clear of all liens, interests, claims and encumbrances, and related procedures as follows.

## I.      BACKGROUND

### Procedural Posture

12.      On September 8, 2017 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Court**"). The bankruptcy cases are referred to collectively hereafter as, the "**Bankruptcy Cases**".

13.      By orders of this Court entered on September 13, 2017, the Bankruptcy Cases are jointly administered under the caption set forth above which is designated as the lead case.

14.      Each Debtor remains in possession of its assets and continues to operate as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

15.      As of the date of this Sale Motion, an Official Committee of Unsecured Creditors ("**Committee**") has been appointed.

16.      This is a core proceeding pursuant to 28 U.S.C. § 157(2)(A), (M), (N), and (O).

17.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

19.     The assets being sold pursuant to this Sale Motion include inventory, accounts receivable, furniture fixtures and equipment, and intellectual property further defined as Assets in the Letter of Intent (as defined herein) and the Agreement (as defined herein).  The assets to be sold shall be collectively referred to as the "**Assets**."

20.     The Assets to be sold shall ***not include*** any assets of WD Encore Software, LLC or any other Excluded Assets as defined in the Agreement.  In addition, the Assets to be sold shall ***not include*** inventory sold to Debtors on consignment or inventory allegedly sold to the Debtors on consignment.

21.     Because the Inventory to be sold has a limited "shelf life" driven by the rapid evolution of existing products and the rapid development of new products, it is critically important to sell WYNIT's Inventory as quickly as reasonably possible to maximize value for WYNIT's creditors. In addition, certain of the Assets to be sold are Accounts Receivable which are less marketable and collectible with age. WYNIT's Assets will have more value to retailers if they can be sold, shipped, and incorporated into retailer inventories before the 2017 holiday retail season commences in earnest, and the Accounts Receivable can be processed very promptly. As a result, the Debtors is requesting that the Court consider this Sale Motion on an expedited basis.

22.     The Debtors' history, operations, debt structure and corporate structure are fully described in the declaration of Peter A. Richichi dated September 8, 2017 and in the declaration of relatedness also dated September 8, 2017.

**Pre-petition Secured Debt**

23.     Each of the Debtors, other than WYNIT Holdings, Inc., is a borrower under a Credit Agreement, dated November 29, 2016 (as amended, restated, supplemented or otherwise

modified from time to time, the "**Wells Credit Agreement**"), under which Wells Fargo Capital Finance, as administrative agent for itself and other participating lenders (collectively, the "**Prepetition Lenders**"), has authority to act as secured lender. WYNIT Holdings, Inc. signed a guaranty of the other Debtors' obligations under the Wells Credit Agreement.

24.     Each of the Debtors, other than WYNIT Holdings, Inc., also executed a security agreement dated November 29, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "**Wells Security Agreement**") in favor of the Prepetition Lenders to secure performance of terms and obligations arising under the Wells Credit Agreement and, under the Wells Security Agreement, each signing Debtor granted Wells Fargo Capital Finance, for the benefit of itself and the Prepetition Lenders, a first priority security interest in and continuing lien on substantially all of each such Debtor's assets and property, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, including the Assets to be sold pursuant to this Sale Motion.

25.     The Wells Credit Agreement provided WYNIT with a revolving, operating line of credit, subject to borrowing base restrictions, in an aggregate maximum principal amount of $250,000,000.00 (the "**Wells Facility**"). As of the Petition Date, the balance of the Wells Facility was in excess of $77,026,711.83.

26.     In addition to the foregoing, on February 12, 2014, WYNIT Distribution, LLC, entered into an Inventory Financing Agreement with Wells Fargo Commercial Distribution Finance, LLC ("**WFCDF**"), that provided financing for the purchase of certain, specified inventory and, in exchange, WFCDF received, among other things, a first-priority, purchase money security interest in specific inventory purchased with the proceeds of its loan. As of August 29, 2017, the outstanding balance on WFCDF's line of credit was in excess of

4

$10,356,227. After careful analysis, WYNIT Distribution, LLC, in consultation with its third-party financial advisor, concluded that the value of the inventory subject to WFCDF's purchase money security interest was nearly identical to the amount owed to WFCDF. As a result, WYNIT Distribution, LLC, entered into a Voluntary Surrender Agreement with WFCDF, and surrendered relevant inventory to WFCDF on September 5, 2017 (the "**Surrendered Inventory**"). The Debtors will not include the Surrendered Inventory in this sale.

27.     Within 90 days prior to the Petition Date, WYNIT also executed a security agreement on June 12, 2017, that purports to provide FitBit, Inc. with a subordinated lien on WYNIT's assets. FitBit filed a related UCC financing statement on June 16, 2017. As a result, any security interest asserted by FitBit may be avoidable, any claim asserted by FitBit may be subject to an objection pursuant to 11 U.S.C. § 502(d), and all rights with respect to any asserted claims, security interests or liens of FitBit are reserved under § 506(d).

**Material Developments After Filing of the Cases**

28.     After filing the Bankruptcy Cases, the Debtors have performed their duties under the Bankruptcy Code attentively and in good faith. Among other things to date:

A.     The Debtors filed the Motion for Authority to Obtain a Postpetition Facility and to use Cash Collateral on September 8, 2017 at [ECF No. 6] (hereafter "**DIP Financing Motion**"). Under the DIP Financing Motion, the Debtors sought Court approval for a senior secured postpetition revolving loan facility of up to $15,000,000 (the "**Postpetition Facility**") with certain of their prepetition first-lien lenders as defined in the DIP Financing Motion (hereafter referred to as the "**Postpetition Lenders**"). The Court has entered two interim Orders granting the DIP Financing Motion and the Postpetition Facility pursuant to which up to $8 million of interim financing is being

provided by the Postpetition Lenders to the Debtors, with such financing collateralized by

a first priority priming lien on substantially all assets of the Debtors.

      B.      Among the other terms set forth fully in the DIP Financing Motion and Exhibits thereto, the Postpetition Facility requires the compliance with the following "**Milestones**", as defined in the DIP Financing Motion and Exhibits thereto. The failure to comply with the following Milestones, among other things, is an Event of Default.

- The filing of this Sale Motion with the court to approve a sale pursuant to section 363 of the Bankruptcy Code acceptable to the Postpetition Agent together with committed asset purchase agreements to purchase substantially all of the inventory assets and equipment and related assets of the Borrowers from purchasers satisfactory to Postpetition Agent (as to inventory, the "**Inventory Stalking Horse Bid**", and as to equipment and related assets, the "**Equipment Stalking Horse Bid**") on or before October 2, 2017;

- Obtaining court approval of the Inventory Stalking Horse Bid and Equipment Stalking Horse Bid no later than October 12, 2017;

- The occurrence of the final auction of the assets no later than October 17, 2017;

- The entry of an Order approving the Sale Motion no later than October 20, 2017; and

- The closing and funding of the approved sale no later than October 23, 2017 as to the Inventory Stalking Horse Bid and no later than October 23, 2017 as to the Equipment Stalking Horse Bid."[1]

### The Debtors' Pre-Bankruptcy Marketing and Sales Efforts

29.     After the last minute failure of a critical funding need, and after careful

consideration of available options and consultation with counsel, WYNIT determined it could no

longer operate on August 24, 2017. WYNIT stopped issuing purchase orders and stopped

accepting supplier deliveries of goods to its warehouses. In addition, to preserve as much value

as possible for its creditors, WYNIT undertook the difficult step of terminating more than 200

---

[1] *See* Second Interim Order, ¶ 15(a).

employees. By the end of that week, the shut-down of WYNIT was known publicly and customers and suppliers began to scramble to find an alternate supplier/distributor for product.

30.     Unfortunately, the opportunity to market WYNIT as a going concern business evaporated immediately. Conway MacKenzie began work as WYNIT's financial advisor in Greenville, South Carolina, on Monday, August 28. Conway MacKenzie, working with executive management, began to explore alternative methodologies to best monetize the assets of the business. A parallel path approach to selling assets was developed.

31.     "Method 1" was to develop a target list of buyers for categories of inventory. That target list initially included parties that were determined to have the best ability to (i) purchase large quantities of assets on a cash-on-delivery basis, and (ii) could potentially move quickly. The list included several large customers, several suppliers, several WYNIT competitors, and other distributors. Method 1 also assumed collection of accounts receivable in the normal course.

32.     "Method 2" was to develop a target list of potential stalking horse bidders for the majority of the assets of the business. The target list included potential strategic buyers (other industry distributors) and liquidators. Conway MacKenzie contacted large, well-capitalized liquidation firms including Hilco Global, Gordon Brothers, Tiger Capital, and Great American. Conway MacKenzie also communicated with several strategic buyers of inventory, including eTech Distribution, Gentec International, Douglas Stewart, D&H Distribution, and the Vitec Group, among others. Ultimately, Hilco Global and Gordon Brothers combined their efforts and submitted a joint bid for all of the assets, with a sharing of upside recoveries with the company under several specific recovery scenarios. At present the bid from a joint venture between Hilco Global and Gordon Brothers (the "**Joint Venture**") is considered the "**Stalking Horse**" bid and is discussed in further detail below. The other strategic bidders contacted had indicated an

interest in specific categories of inventory but not the entire business or such bidders failed to present bids as competitive as the bid presented by the Joint Venture.

33.    Conway MacKenzie's estimate of recovery utilizing Method 1 is a wide range of value. Accounts receivable collection in this industry is detailed, complex, and labor intensive. To execute the Method 1 strategy, WYNIT needs a large collections staff that is motivated. Much of the inventory is seasonal and the inventory value will diminish rapidly prior to and during the holiday season if not sold and shipped. To execute the Method 1 strategy, WYNIT needs a motivated staff of sales people and related procurement people to arrange bulk inventory sales. WYNIT is already experiencing losses of critical employees that are necessary to execute this strategy. In addition, Method 1 will also increase bankruptcy and transactional costs.

**The Agreement and Sale Process**

34.    The Debtors intend to file with this Court a form of agreement by and between the Debtors and the Joint Venture (the "**Stalking Horse Agreement**") at least one week prior to the Auction.  This Stalking Horse Agreement will be consistent with the terms set forth in the letter of intent (the "**LOI**"), which was submitted to the Debtors by the Joint Venture. A copy of the LOI is attached to this Motion as **Exhibit B**. The Debtors propose to effectuate a sale of their Assets to the Joint Venture or the highest bidder, or bidders, after completion of the Auction by a form of agreement (the "**Agreement**") that will be filed with the Court prior to the October 20, 2017 hearing to approve the sale (to the extent such Agreement is different from the form of agreement filed with the Court one week prior to the Auction).  The sale to the Joint Venture, or other highest or best bidder, will provide for, among other things, the sale of the Assets, or portions thereof, free and clear of any and all liens, claims, encumbrances, and other interests.

35.     The Debtors propose to effectuate the sale(s) via the process and procedures outlined in the Bid Procedures (as defined below)[2] in order to determine the highest or best bidder or bidders to enter into the sale transaction(s).

36.     The Debtors propose the following timeline for execution of the Bid Procedures and the sale transaction(s):

| Event | Date |
|---|---|
| Notice + NDAs + Data Room + Direct contact with buyers | Commenced Prepetition |
| Stalking-Horse Bids, Motion(s) due/finalized | By September 28, 2017 |
| Sale Procedures/Stalking-Horse Bid and Bid Protections Approved | By October 4, 2017 |
| Competing Bid Deadline | By October 13, 2017 |
| Final Auction, if necessary, and Announce Results | By October 17, 2017 |
| Sale Motion Approved | By October 20, 2017 |
| Closing re Asset Sale(s) (outside date) | By October 23, 2017 |

## II.     THE "STALKING HORSE" PROPOSAL TO PURCHASE ASSETS

37.     The Debtors (through Conway MacKenzie) have received an initial offer to purchase the Assets from the Joint Venture. The Joint Venture offers to purchase certain Accounts Receivable (to be identified in an exhibit to the Stalking Horse Agreement), and to purchase the Inventory (to be identified in an exhibit to the Stalking Horse Agreement). A summary of the terms of the Joint Venture's LOI is contained in the paragraphs immediately following, although the complete terms of the Joint Venture purchase offer are set forth in the LOI and will be further detailed in the Stalking Horse Agreement to be filed with the Court,

---

[2] Any conflict between this sale motion and the Bid Procedures shall be governed by the Bid Procedures.

which Stalking Horse Agreement shall be considered the final and complete form of the offer from the Joint Venture.

38.    Pursuant to the Agreement, The Joint Venture will guarantee gross proceeds for the sale of Assets of $48 million (the "**Guaranteed Amount**"). The Guaranteed Amount will be allocated as follows:  (a) $35 million to Accounts Receivable (the "**AR Guaranteed Amount**") and (b) $13 million to Inventory (the "**Inventory Guaranteed Amount**").

39.    The Joint Venture will be entitled to keep the gross proceeds relating to Accounts Receivable until such time as gross proceeds from collection of the Accounts Receivable equal $40 million plus Expenses (as defined in the LOI) (the "**A/R Threshold**"), plus 20% of the gross proceeds in excess of the A/R Threshold with 80% of the gross proceeds in excess of the A/R Threshold paid to the Debtors.

40.    In addition, pursuant to the Agreement, the Joint Venture will be entitled to keep gross proceeds relating to Inventory until such time as gross proceeds from the disposition of the Inventory equal $15 million plus Expenses (the "**Inventory Threshold**"), plus 20% of such gross proceeds in excess of the Inventory Threshold with 80% of the gross proceeds in excess of the Inventory Threshold paid to the Debtors.

41.    The offer includes a "good faith" deposit of $5,000,000.00, consistent with the Bid Procedures for any other Qualified Bids. There is no financing contingency for the Joint Venture to close the purchase provided all other terms are satisfied.

42.    The LOI includes a "**Breakup Fee**" of $500,000.00, and an "**Overbid Requirement**," requiring the first (if any) overbid at the Auction to exceed the Joint Venture offer by at least $600,000 (the Breakup Fee plus $100,000.00) and that bid increments shall thereafter be at least $100,000 higher than the prior existing qualified bid (together the Breakup

Fee and the Overbid Requirement are the "**Bid Protections**." The Bid Protections are reasonable and customary in an offer of this size and complexity given that the Joint Venture has and will continue to accrue fees and costs in due diligence to support its offer.

43.    The offer provides that the Joint Venture will reimburse the Debtors for the cost to operate certain facilities and aspects of the Debtor's business, as more specifically described in the LOI, in the amount up to $200,000.00 per week plus labor expenses.

## III.    RELIEF REQUESTED

### Introduction

44.    The Debtors request that the bid procedures portion of this Sale Motion be heard on an expedited basis. If expedited relief is not granted, the maximum value of the Debtors' estates cannot be realized and will result in diminished return to the Debtors' creditors. It is necessary for the Debtors to obtain prompt approval of the Bid Procedures in order to give potential bidders ample time to consider participating in the proposed auction.

45.    The Debtors further request this Court waive the stay required by Bankruptcy Rule 6004(h). Given the exigencies described in this motion, delaying the sale of Assets will have a detrimental effect on the value of the Debtors' estates and diminish returns to their creditors.

46.    Pursuant to Bankruptcy Code §§ 105, 363, and Rules 2002, 6004, of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request that the Court, *inter alia*,

a)   approve the bid procedures ("**Bid Procedures**") attached as **Exhibit A** to this motion and **Exhibit A** to the proposed Order ("**Bid Procedures Order**") filed with this Motion and the related Bid Protections;

b)   establish procedures for objections to the Sale Motion;

c)   set a hearing on the Sale Motion; and

11

d) approve the sale of the Assets free and clear of liens, claims, interests and encumbrances.

**Summary of Key Provisions of the Bid Procedures**

47.     Debtors note the following important aspects of the Sale Motion and Bid

Procedures:

(a)     Sale to Insider. None of the Assets are contemplated to be sold to an "insider" within the meaning of 11 U.S.C. §101(31).

(b)     "**Sale Agent.**" The Debtors are proposing that **Conway MacKenzie** act independently as the Sale Agent.

(c)     Competitive Bidding. The Debtors do not anticipate any private sale or elimination of competitive bidding.

(d)     Bid Protections. The offer from Joint Venture requests a Breakup Fee of $500,000 and an Overbid Requirement which is defined as follows: If there is an initial overbid it must exceed the Joint Venture offer plus the Breakup Fee by at least $100,000; and thereafter, each bid must exceed the prior existing bid by at least $100,000. All bidding is conducted under the supervision of the Sales Agent.

(e)     Deadlines that Effectively Limit Notice. At this time, Debtors anticipate that the deadlines will be shortened by the Court in order to maximize the potential value of the Assets such that they are sold prior to the holiday season. These limited notice circumstances are unavoidable under the circumstances, and mitigated by the general notice being provided to all parties in interest.

(f)     Interim Arrangements with Proposed Buyer. At this time, Debtors do not anticipate any interim arrangements with any proposed buyer.

(f)     Use of Proceeds. Debtors are proposing to release sale proceeds on and after the closing(s) with any Successful Bidder(s) to the Postpetition Lender and Prepetition Lenders (both of which are hereafter referred to as "**Lender**") which are both represented by Wells Fargo Bank, N.A., as their respective agent, without further order of the Bankruptcy Court. Debtors **_do not_** currently propose a release of proceeds to other creditors without a separate order of the Court.

(g)     Tax Exemption. At this time, Debtors are not requesting to have the sale declared exempt from taxes under 11 U.S.C. §1146(a). If that changes, then Debtors will provide supplemental notice to the relevant taxing authorities.

(h)    Record Retention. At this time, Debtors do not anticipate selling their business records as part of the sale process.

(i)    Sale of Avoidance Actions. The Sale will not include the transfer of any avoidance actions or related rights.

(j)    Relief from Bankruptcy Rules 6004(h). By this Sale Motion, Debtors do seek relief from the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h) for the reasons noted herein.

## The Sale Process

48.    Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Good cause exists to expose the assets to auction. Debtors and Conway MacKenzie believe that an auction conducted substantially in accordance with the Bid Procedures will enable the Debtors to obtain the highest or best offer(s) for the Assets under the circumstances, thereby maximizing the value of the Debtors' estates.

49.    Pursuant to the Bid Procedures, a "**Potential Bidder**" must deliver the following to Conway MacKenzie, as the Sale Agent, prior to submitting any Bid:

a.    An executed Confidentiality Agreement acceptable to the Sale Agent; and

b.    Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the sale transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to the Sale Agent as requested by the Sale Agent (and, if requested by the Sale Agent, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed Transaction in a timely manner.

50.    A Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the Sale Agent determines in its business judgment is financially capable of consummating the Transaction in a timely manner, will be permitted to further participate in the Bidding Process.

51.     A Potential Bidder who desires to make a "**Bid**" must deliver a written copy of its Bid on or before the Bid Deadline to the Sale Agent. The Sale Agent may extend the Bid Deadline, after consultation with the Postpetition Agent, but will promptly notify all Potential Bidders of any such extension.

52.     A Bid received from a Potential Bidder by the Bid Deadline will constitute a "**Qualified Bid**" only if it meets all of the requirements specified in the Bid Procedures, all solely as determined by the Sale Agent, after consultation with the Postpetition Agent, including but not limited to:

(a)     The Bid must provide for consideration under the Purchase Agreement for Assets proposed to be purchased.

(b)     The Bid must be in cash unless otherwise consented to by the Sale Agent, after consultation with the Postpetition Agent and Committee.

(c)     The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the sale transaction in a timely manner.

(d)     The Bid (other than the Stalking Horse Bid by the Joint Venture) cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

(e)     The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the assets and businesses of the Debtors and the Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets and businesses of the Debtors in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of the Debtors or the sale transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Purchase Agreement ultimately accepted and executed by the Debtors, and (iv) has authority to make the Bid, execute any documents to close on the Transaction, and proceed to closing on the sale transaction.

(f)     The Bid must be received by the Bid Deadline.

(g)     The Bid must include a good faith deposit (the "**Good Faith Deposit**") in the form of a wire transfer to the Debtors or a certified or bank check payable to the order of the Debtors (or other form acceptable to the Debtors with approval by Lender) in the amount of at least 10% of the purchase price or guaranteed amount for the Assets proposed to be purchased.

(h)     The Bid must comply with the Overbid Requirement set forth herein.

53.     If more than one Qualified Bid is submitted for the Assets in accordance with the Bid Procedures, the Sale Agent will conduct an auction (the "**Auction**") on October 17, 2017, 2017, at 11:00 a.m., prevailing Central time, or at such later time as determined by the Sale Agent, who will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "**Auction Participants**").  The Auction will be held at the offices of Debtors' counsel.

54.     Prior to the Auction, the Sale Agent (in consultation with the Postpetition Agent and Debtors) will evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that the Sale Agent determines in its business judgment to be the highest or best Qualified Bid(s) (the "**Initial Highest Bid**") for the assets of the Debtors' estates. In making this determination, the Sale Agent may consider, among other things, the amount of cash to be paid or delivered, the conditions to closing, the Assets being purchased, and related matters.

55.     The Sale Agent will give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

56.     At the commencement of the Auction, the Sale Agent will formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments higher than

the previous Qualified Bid in the amount of $100,000 or such other amount to be established by the Sale Agent, after consultation with the Postpetition Agent.[3]

57.     The Sale Agent will have the right to adopt such other rules for the Auction which it believes in its business judgment will promote the goals of the Auction to obtain the highest and best price for the Assets, after consultation with the Postpetition Agent.

58.     The Sale Agent, in consultation with the Postpetition Agent and Debtors, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of the Sale Agent, after consultation with the Postpetition Agent, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors.

59.     The Bid Procedures provide an appropriate framework for obtaining offers for the purchase of the Assets and will enable the Sale Agent to review, analyze and compare all Bids received to determine which Bid (or Bids) is in the best interests of the Debtors' estates and their creditors. Therefore, the Debtors respectfully request that this Court approve the Bid Procedures and authorize the Debtors and Sale Agent to take any and all actions necessary or appropriate to implement the Bid Procedures.

**Credit Bid(s)**

60.     Section 363(k) of the Bankruptcy Code states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the

---

[3] Minimum bid increments, other than a credit bid of a Lender, must consist solely of cash consideration unless otherwise authorized by the Sale Agent.

holder of such claim purchases such property, such holder may offset such claim against the purchase price of the property.

Each of the Postpetition Agent and the Prepetition Agent, on behalf of the Postpetition Lenders and the Prepetition Lenders, respectively, are deemed Qualified Bidders and have the right to credit bid should they elect to do so.   Either or both of the Postpetition Agent and the Prepetition Agent may credit bid at the Auction, in their discretion, and they otherwise are not required to comply with the Bid Procedures.   However, by this Sale Motion, Debtors are asking that the Bankruptcy Court deny credit bid rights to any other secured or allegedly secured party.

### III.   NO PRIOR REQUEST

61.    No prior request for the relief sought herein has been requested from this Court or any other court.

62.    Pursuant to Local Rule 9013-2, this motion is verified and is accompanied by a memorandum of law and proposed order.

63.    Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Pete Richichi, 700 W. 76th Street, Ste. 116, Eden Prairie, MN or Gregory A. Charleston, of Conway Mackenzie, Inc., 1075 Peachtree Street, Ste. 3675, Atlanta Georgia 30309, to testify at the hearing on the Motion regarding the facts set forth herein.

WHEREFORE, the Debtors respectfully request the Court enter an Order granting the requested relief, and granting such other and further relief as is necessary and appropriate in the circumstances.

Dated: September 28, 2017                    *e/Robert T. Kugler*

Robert T. Kugler (#0194116)
Edwin H. Caldie (#0388930)
Phillip J. Ashfield (#0388990)
Andrew J. Glasnovich (#0398366)
**STINSON LEONARD STREET LLP**
150 South Fifth Street Suite 2300, Minneapolis,
MN 55402
Telephone:  612.335.1500
Facsimile:  612.335.1657

PROPOSED COUNSEL FOR THE DEBTORS

## VERIFICATION

I, Pete Richichi, Chief Operating Officer of the Debtors declare under penalty of

perjury that the facts set forth in the preceding Motion are true and correct according to

the best of my knowledge, information, and belief.

Dated: _Sept   28_ , 2017

Signed: _____

Pete Richichi, COO

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER<br>BKY 17-42726 |
| WYNIT DISTRIBUTION, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |
| Debtors. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER
(I) GRANTING AN EXPEDITED HEARING AND (II) APPROVING THE SALE OF
ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND
ENCUMBRANCES, AND RELATED PROCEDURES AND BID PROTECTIONS,
PURSUANT TO 11 U.S.C. § 363, AND (III) GRANTING OTHER RELATED RELIEF**

The above-captioned debtors (collectively the "**Debtors**") submit this memorandum of

law in support of their corresponding motion, in accordance with Local Rule 9013-2(a).

## I.  BACKGROUND

The facts supporting this memorandum are set forth in the Sale Motion, verified by Pete

Richichi. All capitalized terms used but not otherwise defined herein shall have the meanings

given to them in the Sale Motion.

## II.  EXPEDITED RELIEF

The Debtors request expedited relief on the Sale Motion. Bankruptcy Rule 9006(c)

provides that the Court may reduce the notice period for a motion for cause. Here, cause exists to

grant the Sale Motion on an expedited basis. As described in more detail in the Sale Motion and

1

ATL 22343375

/.

in the Declaration of Peter A. Richichi in Support of Chapter 11 Petitions and First Day Motions, due to the seasonal nature of Debtors' inventory, the value of the Debtors' estates is fleeting and time only diminishes the ultimate return to creditors. Approval of bid procedures on an expedited basis will allow an auction to maximize value to the Debtors' estates and their creditors by facilitating the most competitive bids for Debtors' assets.

### III.    <u>SALE UNDER 363 GENERALLY</u>

Section 363(b)(1) of the Bankruptcy Code provides: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

A sale of assets of a debtor should be authorized pursuant to Section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g.*, *Fulton State Bank v. Schipper (In re Schipper)*, 933 F. 2d 513, 515 (7th Cir. 1991); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1993). The business judgment rule shields a debtor's management from judicial second-guessing. *In re Farmland Indus., Inc.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) ("'[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.'") (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)). Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of

the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

As explained above, the Debtors, in conjunction with their financial advisors, and the Postpetition Agent, have determined that a sale of the Assets to the Successful Bidder(s) is the best way to maximize the value of the Assets in these Bankruptcy Cases. Maximization of asset value is a sound business purpose, warranting authorization of the sale.

<u>Sale Free of Liens, Interests, Claims and Encumbrances Under 363(f)</u>

Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)   such entity consents;

(3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)   such interest is in bona fide dispute; or

(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and clear of all liens, claims, interests and encumbrances. The Debtors submit that any lien, claim, interest or encumbrance against the Assets will be adequately protected by such creditor's lien, claim, interest or encumbrance attaching to the net proceeds of the proposed sale(s), subject to any claims and defenses the Debtors or any other party in interest may possess with respect thereto. Accordingly, the Debtors request that the Assets be transferred to the Successful Bidder(s) free

3

and clear of all liens, claim, interests, and encumbrances, with such liens, claims, interests, and encumbrances to attach to the proceeds of the sale of the Assets.

### IV.     The Bid Protections Have a Sound Business Purpose and Should be Approved

The Debtors also seek authority to offer customary bid protections to the Joint Venture, the "Stalking Horse" bidder. In order for a bid to be a qualifying overbid, the bid must exceed the Joint Venture's bid by $600,000 (a $500,000 "**Breakup Fee**", plus an **Overbid Requirement** of $100,000); and any bid seeking to compete thereafter must exceed the prior bid by at least $100,000 (collectively, the "**Bid Protections**"). The use of a stalking horse in a public auction process for sales pursuant to section 363 is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, No. 11-CV-219, *1 n.1 (E.D. Wis. July 7, 2011). As a result, stalking horse bidders normally require bidding protections, including a breakup fee, as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id.* The use of bidding protections has become an established practice in chapter 11 cases.

Courts look to nine factors to determine whether bid protections are actually necessary to preserve the value of the estate. *In re Tama Beef Packing, Inc.*, 290 B.R. 90, 97 (B.A.P. 8th Cir. 2003). The factors consider are as follows:

1)   whether the relationship of the parties who negotiated the break-up fee is tainted by self-dealing or manipulation;

2)   whether the fee hampered, rather than encouraged bidding;

3)   whether the amount of the fee is unreasonable relative to the proposed purchase price;

4)    whether the unsuccessful bidder placed the estate property in a sales configuration mode to attract other bidders to the auction;

5)    whether the request for a break-up fee served to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;

6)    whether the fee requested correlates with the maximization of value to the debtor's estate;

7)    whether the principal secured creditors and the official unsecured creditors committee supported the concession;

8)    whether there were safeguards beneficial to the debtor's estate; and

9)    whether there would be a substantial adverse impact on unsecured creditors from approval of the administrative expense.

*Id.* Here, the proposed Bid Protections are presented for the proper purpose of maximizing the value of the Debtors' assets and constitute reasonable and customary fees for the size of this transaction. The Debtors further believe the Overbid Requirement will allow the most robust, competitive auction possible.

Indeed, bidding protections, including break-up fees, are a normal and, in many cases, necessary component of significant sales conducted under section 363 of the Bankruptcy Code. Specifically, bid protections may be legitimately necessary to convince a white knight bidder to enter the bidding by providing some form of compensation for the risks it is undertaking. *In re Integrated Res., Inc.*, 147 B.R. 650, 660–61 (S.D.N.Y. 1992) (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such [protections], bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's ... due diligence.").

As a result, courts can approve bidding protections in connection with proposed bankruptcy sales where proposed procedures provide benefit to the estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999). The Debtors believe that the allowance of

the Overbid Requirement is in the best interests of the Debtors' estates, as the Joint Venture will

establish a floor for further bidding and thus may increase the consideration given in exchange

for the Assets to the benefit of the Debtors' estates.

If the Court does not approve the Bid Protections, the Joint Venture may elect not to

serve as the stalking horse, to the detriment of the Debtors' estates. The proposed Bid Protections

are fair and reasonable. The Break-Up Fee and Overbid Requirement meets the nine factor test of

*In re Tama*, and should, accordingly, be approved.

## V.   GOOD FAITH PURCHASER UNDER 363(M)

Section 363 (m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Seventh

Circuit in *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of
> his conduct in the course of the sale proceedings. Typically, the misconduct that
> would destroy a purchaser's good faith status at a judicial sale involves fraud,
> collusion between the purchaser and other bidders or the trustee, or an attempt to
> take grossly unfair advantage of other bidders.

798 F.2d at 1125 (emphasis omitted) (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d

1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m))).

The Debtors submit that any agreement reached with the Successful Bidder pursuant to the

Bidding Procedures is an arm's-length negotiated transaction entitled to the protections of

section 363(m) and will adduce evidence of the same at the Sale Hearing. *See In re Trism*, 328

F.3d 1003, 1006 (8th Cir. 2003).

## VI.   WAIVER OF 14-DAY FINALITY FOR ORDERS

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). [Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

In light of the current circumstances and financial condition of the Debtors, the Debtors believe that in order to maximize value and preserve jobs, the sale of the Assets should be consummated as soon as practicable. Accordingly, the Debtors request that each Sale Order be effective immediately upon entry of such order and that the fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter the proposed orders granting the relief requested in the Motion.


Dated: September 28, 2017                    *e/Robert T. Kugler*
_____
Robert T. Kugler (#0194116)
Edwin H. Caldie (#0388930)
Phillip J. Ashfield (#0388990)
Andrew J. Glasnovich (#0398366)
**STINSON LEONARD STREET LLP**
150 South Fifth Street Suite 2300, Minneapolis, MN 55402
Telephone:  612.335.1500
Facsimile:  612.335.1657


PROPOSED COUNSEL FOR THE DEBTORS

7

## **Exhibit A**

<u>Bid Procedures</u>

## Exhibit A

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER BKY 17-42726 |
| WYNIT Distribution, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |
| Debtors. | |

## BID PROCEDURES

On September 28, 2017, Debtors filed a *Motion for an Order (I) Granting an Expedited Hearing and (II) Approving the Sale of Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protections, Pursuant to 11 U.S.C. § 363, and (III) Granting Other Related Relief* [Docket No. _____] (the "**Sale Motion**") pursuant to which the Debtors requested authority to sell the Assets (except the assets of WD Encore Software, LLC—Case No.17-42729, and any assets Debtors received on consignment or allegedly received on consignment) to the highest or best bidders subject to the procedures outlined herein. These Bid Procedures have been approved and authorized pursuant to the *Order Approving the Procedures for the Solicitation of Offers and Approving the Form and Manner of Notice* [Docket No. [___]] (the "**Bid Procedures Order**") entered by the United States Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Court**") on or before September __, 2017.

## The Bidding Process

Subject to the conditions set forth therein, at any time on or before **October 13, 2017**, at 5:00 p.m. (prevailing Central Time) (the "**Bid Deadline**"), Conway MacKenzie, the sale agent for the Debtors (the "**Sale Agent**") will (i) engage in discussions and negotiations regarding a sale transaction with any entity (a "**Potential Bidder**") that has made inquiry with the Debtors or their counsel regarding potential asset sales and/or that the Sale Agent reasonably believes could lead to a bona fide written offer relating to a sale offer that would meet the requirements of these

1

//.

Bid Procedures (the "**Proposal**"), (ii) furnish to such Potential Bidder and its Representatives,[1] and to any other party that has made a request therefor in connection with its consideration of making an offer or proposal relating to a sale (each a "**Bid**"), public and non-public information relating to the Debtors and their assets and businesses pursuant to a confidentiality agreement between the Debtors and such Potential Bidder (the "**Confidentiality Agreement**"), and (iii) afford to any such Potential Bidder who has signed a Confidentiality Agreement reasonable access to any data site, properties, assets, books or records of the Debtors. Each Confidentiality Agreement entered into after the date of the entry of the Bid Procedures Order shall recognize that the Debtors are obligated to comply with the terms of these Bid Procedures. Each confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement subject to this Bid Procedures Order. By participating in the Bidding Process (as defined below), each Potential Bidder shall be deemed to have agreed to any and all modifications to any previously executed confidentiality agreement as necessary to permit the Debtors and their Representatives to comply with the terms of these Bid Procedures.

The Sale Agent shall provide these Bid Procedures, together with a copy of the Agency Agreement to be entered into by and between the Debtors and the stalking horse bidder, a joint venture between Hilco Global and Gordon Brothers (the "**Purchase Agreement**"), to each Potential Bidder.

Any Potential Bidder wishing to conduct due diligence concerning a prospective sale transaction shall be granted access, subject to execution of a Confidentiality Agreement, to all relevant business, financial and other information of the Debtors as may be reasonably necessary (to be determined at the Sale Agent's discretion) to enable such Potential Bidder to evaluate the assets of the Debtors and the prospective sale transaction. The Debtors shall make such access available during normal business hours as soon as reasonably practicable. Potential Bidders interested in conducting due diligence should contact Michael Cavanaugh or Greg Charleston of the Sale Agent at mcavanaugh@conwaymackenzie.com or gcharleston@conwaymackenzie.com or by phone at (216) 278-0740. Notwithstanding the foregoing, the Sale Agent is not required to provide confidential or proprietary information to any person if the Sale Agent determines, after consultation with the Postpetition Agent, that such disclosure could be detrimental to the interests of the Debtors' estates.

Prior to the selection of a Bid as the highest or best offer for any individual asset, portion of the Debtors' assets, or all of the Debtors' assets (the "**Successful Bid(s)**"), the Sale Agent may: (a) receive Bids from Potential Bidders, (b) request information from Potential Bidders and engage in discussions with Potential Bidders and take such other actions to determine whether any Bid constitutes or could lead to a superior Proposal, (c) evaluate any Bid made by a Potential Bidder, (d) engage in discussions and negotiations with any Potential Bidder with respect to any Bid submitted by a Potential Bidder, and (e) take any other actions contemplated under these Bid Procedures (collectively, the "**Bidding Process**").

---

[1] "Representatives" means, with respect to any person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such person, when acting in such capacity on behalf of such person.

2

### Deliveries by Potential Bidders

In order to participate in the Bidding Process, each Potential Bidder must deliver the following to the Sale Agent prior to the Bid Deadline (unless previously delivered in a form acceptable to the Debtors as provided herein or waived by the Sale Agent after consultation with the Postpetition Agent and Committee):

(a)     An executed **Confidentiality Agreement** acceptable to the Sale Agent; and

(b)     **Financial statements of, or other information relating to, the Potential Bidder** or, if the Potential Bidder is an entity formed for the purpose of the sale transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to the Sale Agent (and, if requested by the Sale Agent, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed sale transaction in a timely manner.

A Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the Sale Agent determines in its business judgment after consultation with the Postpetition Agent and Committee, is financially capable of consummating the sale transaction in a timely manner shall be permitted to further participate in the Bidding Process. The Sale Agent may require an update of such information and an affirmation of any Potential Bidder's financial capability to bid and consummate any sale transaction contemplated hereunder.

### Due Diligence for Potential Bidders

To obtain due diligence access or additional information from the Debtors, a Potential Bidder must first advise the Sale Agent of the nature and extent of additional due diligence such Potential Bidder may wish to conduct. The Sale Agent shall coordinate all requests for additional information and due diligence access by such Potential Bidders with the Debtors. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline, except as otherwise agreed to by the Sale Agent in writing after consultation with the Postpetition Agent.

### Submission by Bid Deadline

A Potential Bidder who desires to make a Bid must deliver a written copy of its written purchase or agency agreement marked to show the specific changes to the Purchase Agreement that the Potential Bidder requires (which marked copy may be an electronic comparison of the written agreement submitted and the Purchase Agreement) on or before **October 13, 2017** to the Sale Agent. The Sale Agent may, after consultation with the Postpetition Agent, extend the Bid Deadline, but shall promptly notify all Potential Bidders of any such extension.

## Determination of "Qualified Bid" Status

A Bid received from a Potential Bidder by the Bid Deadline will constitute a "**Qualified Bid**" only if it includes all of the following documents (the compliance of which shall be determined by the Sale Agent after consultation with the Postpetition Agent) (collectively, the "**Required Bid Documents**") and a Good Faith Deposit as described below and meets all of the Bid Requirements (as defined below):

(a)     A written **asset  purchase agreement or agency agreement** duly executed by the Potential Bidder in substantially the same form as the Purchase Agreement with changes only regarding the applicable assets and contracts being purchased and any other changes acceptable to the Sale Agent after consultation with the Postpetition Agent, together with a copy of such agreement **marked to show the specific changes to the Purchase Agreement** that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the Purchase Agreement). The asset purchase agreement submitted by a Potential Bidder shall:

  i.     specifically delineate which individual asset, portion of the Debtors' assets, or all of the Debtors' assets set forth in a schedule prepared by the Sale Agent, after consultation with the Postpetition Agent and Committee, that will be posted in the Debtors' data room (the "**Property Schedule**") a Potential Bidder proposes to purchase;

  ii.    include a complete set of all schedules and exhibits thereto which, to the extent practicable, will be marked to show the specific changes to the schedules and exhibits to the Purchase Agreement, if applicable;

  iii.   not contain any financing or due diligence contingencies to closing on the proposed sale transaction;

  iv.    not contain any condition to closing of the sale transaction on the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approvals, if any); and

  v.     provide that the offer of the Potential Bidder is irrevocable through thirty (30) days after the entry of an Order approving the Sale Motion and subject to the backup bidder provisions herein.

(b)     A good faith deposit (the "**Good Faith Deposit**") in the form of a wire transfer to the Debtors or a certified or bank check payable to the order of the Debtors (or other form acceptable to the Debtors with approval by

4

Postpetition Agent) in the amount of at least 10% of the purchase price or guaranteed amount for the Assets proposed to be purchased.

Each Potential Bidder that makes a Qualified Bid shall be referred to as a "**Qualified Bidder**." Each of the Postpetition Agent and the Prepetition Agent shall be a Qualified Bidder.

## <u>Bid Requirements</u>

All Bids must also satisfy all of the following requirements, all as determined solely by the Sale Agent after consultation with the Postpetition Agent:

(a)     The Bid must provide for consideration under the Purchase Agreement for the Assets proposed to be purchased.

(b)     The Bid must be in cash unless otherwise consented to by the Sale Agent, after consultation with the Postpetition Agent.

(c)     The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the sale transaction in a timely manner.

(d)     The Bid must satisfy the Overbid Requirement by exceeding the initial bid of the Joint Venture by at least $600,000 (the Break-Up Fee plus $100,000). Thereafter, each Bid must exceed the high bid by no less than $100,000.

(e)     The Bid (other than the initial bid by the Joint Venture) cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

(f)     The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the assets and businesses of the Debtors and the sale transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets and businesses of the Debtors in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of the Debtors or the sale transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Purchase Agreement ultimately accepted and executed by the Debtors, and (iv) has authority to make the Bid, execute any necessary documents to close on the sale transaction, and proceed to closing on the sale transaction.

(g)     The Bid must be received by the Bid Deadline.

**Auction**

Prior to the Auction (as defined below), the Sale Agent (in consultation with the Postpetition Agent) shall evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that the Sale Agent determines in its business judgment to be the highest or best Qualified Bid(s) (the "**Initial Highest Bid**") for a sale of the Assets of the Debtors' estates. In making this determination, the Sale Agent may consider, among other things, the amount of cash to be paid or delivered, and the other terms and conditions of the Qualified Bid(s). The Sale Agent shall provide copies of all Bids to the Postpetition Agent promptly after the Bid Deadline, but not later than Midnight prevailing Central time on **October 13, 2017**.

If more than one Qualified Bid has been submitted for the particular Assets of the Debtors' estates in accordance with these Bid Procedures, the Sale Agent will conduct an auction (the "**Auction**") with respect to such Qualified Bids in order to determine, in the business judgment of the Sale Agent after consultation with the Postpetition Agent and Committee, the Successful Bid(s).

The Auction, if required, will commence at 11:00 a.m. (prevailing Central Time) on **October 17, 2017** at the offices of Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, or at such later time or other place as agreed by the Sale Agent after consultation with the Postpetition Agent, or approved by Order of the Bankruptcy Court, and of which the Sale Agent will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "**Auction Participants**").

The Sale Agent shall give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

Only the Debtors, the Sale Agent, the Auction Participants, potential financing sources of the Auction Participants, the Postpetition Agent, the Prepetition Agent, the Committee and their respective Representatives will be entitled to attend, participate and be heard at the Auction.

At the commencement of the Auction, the Sale Agent shall formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments higher than the previous Qualified Bid in the amount of $100,000 or such other amount to be established by the Sale Agent after consultation with the Postpetition Agent.[3]

The Sale Agent after consultation with the Postpetition Agent shall have the right to adopt such other rules for the Auction which the Sale Agent believes in its business judgment will promote the goals of the Auction, including, without limitation, that the Sale Agent can continue to take and negotiate bids in lot or in bulk until the Successful Bid(s) have been selected.

Each Auction Participant shall be deemed to have agreed to keep its final Qualified Bid made at or prior to the Auction open through thirty (30) days after the entry of an Order

---

[3] Minimum bid increments, other than a credit bid pursuant to a Credit Bid Right, must consist solely of cash consideration unless otherwise authorized by the Sale Agent after consultation with the Lenders.

approving the Sale Motion. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid(s) are determined in the business judgment of the Sale Agent after consultation with the Committee and Postpetition Agent. To facilitate a deliberate and orderly consideration of competing Qualified Bids submitted at the Auction, the Sale Agent after consultation with the Postpetition Agent may adjourn the Auction at any time and from time-to-time and may conduct multiple rounds of bidding. Prior to conclusion of the Auction, the Sale Agent after consultation with the Postpetition Agent may permit one or more Auction Participants who have submitted bids for less than all Assets of the Debtors to join together as a single Qualified Bidder for the purpose of submitting a joint Qualified Bid to acquire substantially all Assets of the estates, provided that such Auction Participants so join without improper collusion under the Bankruptcy Code or other applicable law. Upon conclusion of the Auction, the Sale Agent, in consultation with the Postpetition Agent, will (a) review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (b) after consultation with the Committee and the Postpetition Agent, identify the Successful Bid(s). In making this determination, the Sale Agent, after consultation with the Postpetition Agent and the Committee, may consider, among other things, the amount of cash to be paid or delivered and the other terms or conditions of the Qualified Bid(s), and the determination by the Sale Agent, after consultation with the Postpetition Agent and the Committee, shall be final for the purposes of these Bid Procedures.

### Credit Bid Rights

Credit Bid Right. The right to credit bid under section 363(k) of the Bankruptcy Code is specifically preserved. The Postpetition Agent, on behalf of the Postpetition lenders,[4] and the Prepetition Agent, on behalf of the Prepetition Lenders,[5] shall each be deemed a Qualified Bidder in all respects, and shall not be required to submit a Good Faith Deposit, purchase agreement, or any other deliverable or documentation to the Sale Agent, the Debtors, or their representatives or agents and may credit bid, in their respective discretion, at the Auction. Further, each of the Postpetition Agent and the Prepetition Agent may submit a credit bid, in such party's respective sole and absolute discretion, at any time prior to announcement of the Successful Bid(s), regardless of whether such party participated in prior rounds of the Auction, on any individual asset, portion of the assets, or all assets constituting its respective collateral. ***Credit bidding by all junior lien holders will be prohibited***, but all rights, claims and objections will be reserved and can be asserted against the sale(s) proceeds, if any.

### Sale Hearing

An evidentiary hearing to consider the Sale Motion and approval of the Successful Bid(s) (the "**Sale Hearing**"), will be held on or before **October 20, 2017 at 9:00 a.m. prevailing Central time** (the "**Sale Hearing**"), in the courtroom of the Honorable Kathleen H. Sandberg,

---

[4] Under the DIP Financing Motion the Debtors sought Court approval for a senior secured postpetition revolving loan facility of up to $15,000,000 with certain of their prepetition first-lien lenders as defined in the DIP Financing Motion (the "**Postpetition Lenders**").

[5] Each of the Debtors other than WYNIT Holdings, Inc. is a borrower under a Credit Agreement, dated November 29, 2016 under which Wells Fargo Capital Finance, as administrative agent for itself and other participating lenders (collectively, the "**Prepetition Lenders**"), has authority to act as secured lender.

United States Bankruptcy Judge, at the United States Bankruptcy Court, District of Minnesota, 300 South Fourth Street, Courtroom 8 West, Minneapolis, Minnesota 55415. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court without further notice to creditors and parties in interest other than by announcement by the Debtors of the adjourned date at the Sale Hearing.

The Debtors' presentation to the Bankruptcy Court for approval of the Successful Bid(s) does not constitute the Debtors' acceptance of the Bid(s). The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

## Objections

Objections, if any, to the Sale Motion shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties **before 5:00 p.m. on October 18, 2017 (the "Objection Deadline")**: (a) counsel for the Debtors at Stinson Leonard Street LLP, Attn: Robert Kugler, 50 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402 robert.kugler@stinson.com, (b) counsel to Wells Fargo Bank, N. A. at Greenberg Traurig, LLP, Attn: David Kurzweil, 3333 Piedmont Road NE, Ste. 2500, Atlanta, Georgia 30305 kurzweild@gtlaw.com (c) the United States Trustee's Office, attn. Michael R. Fadlovich, 300 South Fourth Street, Suite 1015, Minneapolis, MN 55402 Michael.Fadlovich@usdoj.gov.

If any Auction Participant whose Qualified Bid is a Successful Bid (a "**Successful Bidder**") fails to consummate the Transaction because of a breach or failure to perform on the part of such Successful Bidder, or for any reason other than the failure of the Bankruptcy Court to approve the terms of the sale transaction, the Auction Participant that had submitted the next highest or otherwise best Qualified Bid for the same asset or assets of the estates at the Auction or prior to the Auction (the "**Back-Up Bidder**") will be deemed to be the Successful Bidder, and the Debtors will be authorized to consummate the sale transaction with such Auction Participant without further order of the Bankruptcy Court, and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Auction Participant submitting such Qualified Bid shall within three (3) business days after such notification provide a Good Faith Deposit (unless such Auction Participant previously shall have provided a Good Faith Deposit that shall not have been returned as described below). Upon providing such Good Faith Deposit, such Auction Participant shall be deemed the Successful Bidder. If any Auction Participant fails to consummate the sale transaction because of a breach or failure to perform on the part of such Auction Participant (including, without limitation, the failure to timely deposit the Good Faith Deposit), the process described above may continue with other Auction Participants in decreasing order of the Qualified Bids as determined by the Sale Agent after consultation with the Postpetition Agent until an Auction Participant shall consummate the sale transaction.

## Disposition of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder(s), or a Back-Up Bidder that consummates a transaction in place of a Successful Bidder as provided for herein, shall be retained by the Debtors and applied toward the payment of the Successful Bid(s) at the closing of

the sale transaction. If any Successful or Back-Up Bidder fails, for any reason other than Bankruptcy Court denial of the sale transaction, to close a sale transaction, then the Good Faith Deposit shall be retained by the Debtors as partial damages for the failure to consummate the sale transaction. The Good Faith Deposit of all Qualified Bidders (other than the Successful Bidder(s), a Back-Up Bidder that consummates a sale transaction in place of a Successful Bidder as provided for herein, or a Successful Bidder or a Back-Up Bidder that forfeits its deposit as liquidated damages as provided for herein) will be returned, without interest, to each such Qualified Bidder within ten business days after the closing of all proposed sale transactions approved by the Bankruptcy Court at the Sale Hearing.

## **Modifications**

The Sale Agent, after consultation with the Postpetition Agent, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of the Sale Agent, after consultation with the Postpetition Agent and Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors. At or before the conclusion of the Auction, the Sale Agent, after consultation with the Postpetition Agent, may impose such other terms and conditions upon Qualified Bidders as the Sale Agent determines to be in the best interests of the Debtors' estates in these cases.

## **Exhibit B**

<u>Letter of Intent</u>

*ATL 22343375*

/./.

 

September 27, 2017

***VIA ELECTRONIC MAIL***

Mr. Michael R. Cavanaugh
Conway Mackenzie
1075 Peachtree St. NE
Atlanta, GA 30309

**Re:** **WYNIT Distribution, LLC (the "Company")**

Dear Michael:

This letter will serve as the preliminary, non-binding indication of interest (the "Indicative Bid") for the acquisition of a substantial portion of the assets of the Company. This Indicative Bid is submitted on behalf of a joint venture composed of Gordon Brothers and Hilco Global (together with their respective subsidiaries and their affiliates, collectively the "Joint Venture").

The Joint Venture is prepared to proceed with the disposition of the Assets (defined below) on two separate financial structures as outlined below:

1.       Financial Terms[1].

       (a) The Joint Venture will guarantee gross proceeds from the sale of the Assets (Defined below) of $48 million (the guarantee will be paid at closing, and secured on a first lien, priority basis) allocated $35 million to the accounts receivable and $13 million to the inventory. The Joint Venture will keep the gross proceeds until such time as gross proceeds from collection of the accounts receivable equal $40 million plus Expenses (defined below) (the "A/R Threshold"), plus 20% of the of gross proceeds in excess of the A/R Threshold with 80% of the gross proceeds in excess of the A/R Threshold paid to the Company. In addition, the Joint Venture will keep gross proceeds until such time as gross proceeds from the disposition of the inventory equal $15 million plus Expenses (the "Inventory Threshold"), plus 20% of such gross proceeds in excess of the Inventory Threshold with 80% of the gross proceeds in excess of the Inventory Threshold paid to the Company. For purposes of clarity, Expenses may be recovered from gross proceeds of either accounts receivable or inventory prior to sharing with the Company on either asset class, but in no event will Expenses be doubled counted.

---

[1]      The financial proposal is based on the following assumptions: (a) the inventory at Closing will be substantially similar, in terms of gross inventory level and mix of inventory) as set forth on the inventory Exhibit transmitted with our prior offer, and be no less than $51 million (b) no less than $76 million of current accounts receivable (net of discounts, set-offs, and charged off amounts) owed and outstanding as of Closing. The Company and the Joint Venture will negotiate an appropriate adjustment mechanism to account for account receivable collection and inventory reduction between now and Closing. The Joint Venture expects that the Company and the Joint Venture will conduct an inventory count prior to Closing.

(b)  The expenses of the disposition of the Assets, specifically (a) rental costs of the distribution centers in Memphis (2 facilities) and Canada (the "DCs"), (b) shipping related to the inventory, (c) cost of rolling stock and other equipment at the DCs, (d) IT costs related to maintenance of the inventory and accounts receivable management systems, and (e) occupancy costs of the Company's HQ in Greenville, SC, will be reimbursed by the Joint Venture in an amount equal to actual costs up to $200,000 per week (the "Reimbursed Expenses").  The Joint Venture will cover all personnel costs relating to personnel at the DCs accounts receivable collection staff (such expenses with the Reimbursed Expenses, the "Expenses").[2]

(c)  The Joint Venture will provide the Company with no less than 5 days of notice of (a) vacating any DC or the Company's HQ (following such notice period, the Joint Venture's responsibility for such occupancy costs would terminate), (b) no longer requiring the services of any of the Company's personnel (following such notice period, the Joint Venture's responsibility for such personnel costs would terminate), or (c) no longer requiring any assets (i.e., IT systems or rolling stock or equipment) under lease by the Company (following such notice period, the Joint Venture's responsibility for such costs would terminate).

(d)  The Joint Venture will provide a good faith deposit of $5,000,000.

2.  <u>Assets Included in the Deal</u>.  The Joint Venture will be the exclusive disposition agent for the Company's inventory (including any returned inventory or other inventory that is not first quality, but expressly excluding consigned and customer-owned inventory), accounts receivable (including charged off accounts), owned furniture, fixtures, and equipment, and intellectual property (including to the extent owned by the Company, any trademarks, patents, customer lists, and IPv4 addresses) (collectively, the "Assets").

3.  <u>Agency Agreement</u>.  The Joint Venture's indication of interest is subject to the parties entering into an agency agreement ("Agreement") with respect to the Joint Venture's appointment as the exclusive disposition agent for the Assets.  Such Agreement shall contain customary provisions for the disposition of assets, including customary representations, warranties, covenants and conditions.

4.  <u>Timing</u>.   This proposal is conditioned on receiving an order from the Bankruptcy Court overseeing the Company's insolvency proceeding approving the transaction no later than October 20, 2017.  If the Company chooses to conduct an auction prior to October 20, 2017, the Joint Venture is willing to allow this offer to serve as a stalking horse offer with appropriate bidding procedures and break-up fee protections, which for purposes hereof include a $500,000 break-up fee plus appropriate overbid protections.

5.  <u>Non-binding Nature of Offer</u>.  This letter is only an expression of the Joint Venture's interest in the transaction described herein and does not constitute, and is not intended to be, a binding agreement of the Joint Venture or give rise to any legal obligation on the part of the Joint Venture.  A binding agreement with respect to the proposed transaction will result only from the execution of mutually satisfactory definitive agreements with respect thereto (executed by Company and the Joint Venture) and will be entirely subject to the terms and conditions contained therein.

---

[2]      The Joint Venture will work closely with the Company to minimize the Expenses, eliminating contracts and personnel as quickly as possible.  The Joint Venture expects that the Expenses will not exceed $3 million.
CORE/3504319.0002/135243715.1

We look forward to hearing from you in response to our indication of interest.

Very truly yours,

A JOINT VENTURE COMPOSED OF HILCO TRADING, LLC, AND GORDON BROTHERS GROUP, LLC

By: /s/ Eric W. Kaup_____

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER |
| | BKY 17-42726 |
| | |
| WYNIT Distribution, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |
| | |
| Debtors. | |

**ORDER GRANTING AN EXPEDITED HEARING, APPROVING BID PROTECTIONS
AND PROCEDURES FOR THE SOLICITATION OF OFFERS FOR SALE OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS, AND GRANTING RELATED RELIEF**

At a hearing on October 4, 2017 (the "**Bid Procedures Hearing**"), this Court considered

the *Motion for an Order (I) Granting an Expedited Hearing and (II) Approving the Sale of Assets*

*Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and*

*Bid Protection, Pursuant to 11 U.S.C. § 363, and (III) Granting Other Related Relief* [Docket

No. _____] (the "**Sale Motion**")[1] filed by Debtors. Based on the arguments and evidence at the

Bid Procedures Hearing, Court hereby finds and determines that:

1.      The Court has jurisdiction to consider the Sale Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334, the consideration of the Sale Motion and the

relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms that are not defined herein shall have the meanings given to them in the Bid Procedures.

1

*ATL 22343375*

*//.*

2.      As reflected in the *Certificate of Service* [Docket ___] filed with respect to the Bid Procedures Hearing, notice of the Sale Motion and notice of the Bid Procedures Hearing have been served on the parties identified on the service list maintained in these cases (who do not receive electronic notice) at the addresses set forth therein (the "**Notice**").

3.      The Notice is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Sale Motion, and no other or further notice of the Sale Motion for the Bid Procedures Hearing is necessary. A reasonable and fair opportunity to object to the Sale Motion and the relief granted in this Order has been afforded under the circumstances.

4.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion. Such good and sufficient reasons were set forth in the Sale Motion and on the record at the Bid Procedures Hearing and are incorporated by reference herein and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

5.      The bid procedures in the form attached hereto as **Exhibit A** (the "**Bid Procedures**"), are fair, reasonable, and appropriate and are designed to maximize the value of the Debtors' estates. The Credit Bid Rights (as defined in the Bid Procedures) are permissible under § 363(k) of the Bankruptcy Code and are fair and reasonable in light of the nature of these Bankruptcy Cases.

6.      The service of the notice of the Bid Procedures, the Sale Hearing (as defined below), the Objection Deadline (as defined below), the respective dates, times and places for an Auction (as defined below), if required under the Bid Procedures, is adequate and reasonably calculated to provide due, proper, and timely notice to all interested parties of, among other things, the entry of this Order, the Bid Procedures, the Auction (if required under the Bid

Procedures), the Sale Hearing, the Sale Motion, including the sale of the Debtors' estates' right, title and interest in, to and under the Debtors' assets free and clear of any and all liens, claims, encumbrances, and interests, and the procedure for objecting thereto. Except as otherwise set forth herein, no other or further notice is necessary.

7.     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

64.    The Debtors (through Conway MacKenzie) have received an initial offer to purchase the Assets from a joint venture consisting of Hilco Global and Gordon Brothers (hereafter referred to as the "**Joint Venture**").  The Joint Venture offers to purchase certain Accounts Receivable (to be identified in an exhibit to the Stalking Horse Agreement), and to purchase the Inventory (to be identified in an exhibit to the Stalking Horse Agreement). A summary of the terms of the Joint Venture's LOI is contained in the paragraphs immediately following, although the complete terms of the Joint Venture purchase offer are set forth in the LOI and will be further detailed in the Stalking Horse Agreement to be filed with the Court, which Stalking Horse Agreement shall be considered the final and complete form of the offer from the Joint Venture.

65.    The Joint Venture will guarantee gross proceeds for the sale of Assets of $48 million (the "**Guaranteed Amount**"). The Guaranteed Amount will be allocated as follows:  (a) $35 million to Accounts Receivable (the "**AR Guaranteed Amount**") and (b) $13 million to Inventory (the "**Inventory Guaranteed Amount**").

3

66.     The Joint Venture will be entitled to keep the gross proceeds relating to Accounts Receivable until such time as gross proceeds from collection of the Accounts Receivable equal $40 million plus Expenses (as defined in the LOI) (the "**A/R Threshold**"), plus 20% of the gross proceeds in excess of the A/R Threshold with 80% of the gross proceeds in excess of the A/R Threshold paid to the Debtors.

67.     In addition, the Joint Venture will be entitled to keep gross proceeds relating to Inventory until such time as gross proceeds from the disposition of the Inventory equal $15 million plus Expenses (the "**Inventory Threshold**"), plus 20% of such gross proceeds in excess of the Inventory Threshold with 80% of the gross proceeds in excess of the Inventory Threshold paid to the Debtors.

68.     The offer includes a "good faith" deposit of $5,000,000.00, consistent with the Bid Procedures for any other Qualified Bids. There is no financing contingency for the Joint Venture to close the purchase provided all other terms are satisfied.

8.     The LOI includes a "Breakup Fee" of $500,000.00, and an "Overbid Requirement," requiring the first (if any) overbid to exceed the Joint Venture offer by at least $600,000 (the Breakup Fee plus $100,000.00) and that bid increments shall thereafter be at least $100,000 higher than the prior existing qualified bid (together the Breakup Fee and the Overbid Requirement are the "**Bid Protections**").  The Bid Protections are reasonable and customary in an offer of this size and complexity given that the Joint Venture has and will continue to accrue fees and costs in due diligence to support its offer.

9.     The offer provides that the Joint Venture will reimburse the Debtors for the cost to operate certain facilities and aspects of the Debtor's business, as more specifically described in the Agreement, in the amount of $200,000.00 per week.

4

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

The Motion is **GRANTED** as set forth herein.

i.    All objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing are denied and overruled in their entirety on the merits.

ii.    The Joint Venture offer is an offer to purchase the Assets, is submitted by a true third party, and such offer will be subjected to the Bid Procedures approved by this Court.

iii.    The Debtors may proceed with a sale and auction process in accordance with the Bid Procedures, which procedures are hereby approved in their entirety in the form attached hereto as **Exhibit A**. However, the consummation of the sale of the Debtors' Assets (as will be provided in the Agreement) shall remain subject to the entry of an Order granting the Sale Motion.

iv.    Potential bidders must comply with all terms of the Bid Procedures in order to participate in the bidding process. All bids must satisfy all of the requirements contained in the Bid Procedures.  Notwithstanding the foregoing, the Postpetition Agent and the Prepetition Agent, on behalf of the Postpetition Lenders and the Prepetition Lenders, respectively, (a) shall be deemed Qualified Bidders entitled to participate in the Auction and credit bid at the Auction and (b) shall not be required to comply with the Bid Procedures.

v.    The Debtors and Sale Agent are authorized and directed to take any and all actions necessary or appropriate to implement the Bid Procedures. The process for submitting Qualified Bids is fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, their creditors and other parties in interest. Any

disputes as to the selection of a Qualified Bid, Initial Highest Bid, and/or Successful Bid shall be resolved by this Court.

vi.     As further described below, the key dates for this Order and the Bid Procedures are as follows, with each of such dates being subject to extension by the Debtors with the consent of the Postpetition Agent:

| Event | Date and Time (if applicable) |
|---|---|
| Notice | Within 3 days of the entry of this Order |
| Bid Deadline | **October 13, 2017 at 5:00 p.m. prevailing Central Time** |
| Auction | **October 17, 2017 at 11 a.m. prevailing Central time** |
| Sale Hearing Objection Deadline | **October 18, 2017 at 5:00 p.m. prevailing Central Time** |
| Sale Hearing | **October 20, 2017 at 9:00 a.m. prevailing Central Time** |

vii.    Any person desiring to submit a bid for the Debtors' assets must comply with the Bid Procedures and shall not be permitted to participate at the Auction unless such person is an Auction Participant or is otherwise permitted to participate at the Auction under the Bid Procedures; provided that, as set forth in Paragraph (iv) of this Order, the Postpetition Agent and the Prepetition Agent shall be deemed Qualified Bidders entitled to participate at the Auction, including to credit bid for some or all of the Assets, and shall not be required to comply with the Bid Procedures.

viii.   If a bid has been submitted for the Debtors' assets in accordance with the Bid Procedures, the Sale Agent will conduct an auction as to the Assets (the "**Auction**") on October 17, 2017, at 11 a.m., prevailing Central time, at the offices of Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402. The Sale Agent will notify all Qualified Bidders who have submitted Qualified Bids of such Auction.

6

ix.    A final hearing (the "**Sale Hearing**") to consider the Sale Motion shall be held at October 20, 2017 at 9:00 a.m. prevailing Central Time in the courtroom of the Honorable Kathleen Sandberg, United States Bankruptcy Judge, at the United States Bankruptcy Court, District of Minnesota, 300 South Fourth Street, Courtroom 8 West, Minneapolis, MN 55415, Minneapolis, Minnesota.

x.    Any person failing to timely file an objection to the Sale Motion shall be barred from objecting to the Sale Motion, including the sale of the Debtors' assets in accordance with the Agreement, free and clear of any and all liens, claims, encumbrances, and interests and will be deemed to consent to the sale of the Debtors' assets to the Successful Bidder(s) free and clear of any and all liens, claims, encumbrances, and other interests.

xi.    Notwithstanding the foregoing, the Debtors, after consultation with the Postpetition Agent, may cancel the Auction or remove certain of the Assets from the Auction.

xii.    For cause shown, notwithstanding Bankruptcy Rules 6004, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stay described in Bankruptcy Rules 6004(h) is hereby waived.

xiii.    The terms of this Order shall control to the extent of any conflict with the Motion or the Bid Procedures.

xiv.    This Order shall become effective immediately upon its entry.

xv.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: October ___, 2017

_____
United States Bankruptcy Judge

**<u>Exhibit A</u>**

<u>Bid Procedures</u>

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER BKY 17-42726 |
| | |
| WYNIT Distribution, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |
| Debtors. | |

**BID PROCEDURES**

On September 28, 2017, Debtors filed a *Motion for an Order (I) Granting an Expedited Hearing and (II) Approving the Sale of Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protections, Pursuant to 11 U.S.C. § 363, and (III) Granting Other Related Relief* [Docket No. _____] (the "**Sale Motion**") pursuant to which the Debtors requested authority to sell the Assets (except the assets of WD Encore Software, LLC—Case No.17-42729, and any assets Debtors received on consignment or allegedly received on consignment) to the highest or best bidders subject to the procedures outlined herein. These Bid Procedures have been approved and authorized pursuant to the *Order Approving the Procedures for the Solicitation of Offers and Approving the Form and Manner of Notice* [Docket No. [___]] (the "**Bid Procedures Order**") entered by the United States Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Court**") on or before September __, 2017.

**The Bidding Process**

Subject to the conditions set forth therein, at any time on or before **October 13, 2017**, at 5:00 p.m. (prevailing Central Time) (the "**Bid Deadline**"), Conway MacKenzie, the sale agent for the Debtors (the "**Sale Agent**") will (i) engage in discussions and negotiations regarding a sale transaction with any entity (a "**Potential Bidder**") that has made inquiry with the Debtors or their counsel regarding potential asset sales and/or that the Sale Agent reasonably believes could lead to a bona fide written offer relating to a sale offer that would meet the requirements of these

1

//.

Bid Procedures (the "**Proposal**"), (ii) furnish to such Potential Bidder and its Representatives,[1] and to any other party that has made a request therefor in connection with its consideration of making an offer or proposal relating to a sale (each a "**Bid**"), public and non-public information relating to the Debtors and their assets and businesses pursuant to a confidentiality agreement between the Debtors and such Potential Bidder (the "**Confidentiality Agreement**"), and (iii) afford to any such Potential Bidder who has signed a Confidentiality Agreement reasonable access to any data site, properties, assets, books or records of the Debtors. Each Confidentiality Agreement entered into after the date of the entry of the Bid Procedures Order shall recognize that the Debtors are obligated to comply with the terms of these Bid Procedures. Each confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement subject to this Bid Procedures Order. By participating in the Bidding Process (as defined below), each Potential Bidder shall be deemed to have agreed to any and all modifications to any previously executed confidentiality agreement as necessary to permit the Debtors and their Representatives to comply with the terms of these Bid Procedures.

The Sale Agent shall provide these Bid Procedures, together with a copy of the Agency Agreement to be entered into by and between the Debtors and the stalking horse bidder, a joint venture between Hilco Global and Gordon Brothers (the "**Purchase Agreement**"), to each Potential Bidder.

Any Potential Bidder wishing to conduct due diligence concerning a prospective sale transaction shall be granted access, subject to execution of a Confidentiality Agreement, to all relevant business, financial and other information of the Debtors as may be reasonably necessary (to be determined at the Sale Agent's discretion) to enable such Potential Bidder to evaluate the assets of the Debtors and the prospective sale transaction. The Debtors shall make such access available during normal business hours as soon as reasonably practicable. Potential Bidders interested in conducting due diligence should contact Michael Cavanaugh or Greg Charleston of the Sale Agent at mcavanaugh@conwaymackenzie.com or gcharleston@conwaymackenzie.com or by phone at (216) 278-0740. Notwithstanding the foregoing, the Sale Agent is not required to provide confidential or proprietary information to any person if the Sale Agent determines, after consultation with the Postpetition Agent, that such disclosure could be detrimental to the interests of the Debtors' estates.

Prior to the selection of a Bid as the highest or best offer for any individual asset, portion of the Debtors' assets, or all of the Debtors' assets (the "**Successful Bid(s)**"), the Sale Agent may: (a) receive Bids from Potential Bidders, (b) request information from Potential Bidders and engage in discussions with Potential Bidders and take such other actions to determine whether any Bid constitutes or could lead to a superior Proposal, (c) evaluate any Bid made by a Potential Bidder, (d) engage in discussions and negotiations with any Potential Bidder with respect to any Bid submitted by a Potential Bidder, and (e) take any other actions contemplated under these Bid Procedures (collectively, the "**Bidding Process**").

---

[1] "Representatives" means, with respect to any person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such person, when acting in such capacity on behalf of such person.

### Deliveries by Potential Bidders

In order to participate in the Bidding Process, each Potential Bidder must deliver the following to the Sale Agent prior to the Bid Deadline (unless previously delivered in a form acceptable to the Debtors as provided herein or waived by the Sale Agent after consultation with the Postpetition Agent and Committee):

(a)    An executed **Confidentiality Agreement** acceptable to the Sale Agent; and

(b)    **Financial statements of, or other information relating to, the Potential Bidder** or, if the Potential Bidder is an entity formed for the purpose of the sale transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to the Sale Agent (and, if requested by the Sale Agent, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed sale transaction in a timely manner.

A Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the Sale Agent determines in its business judgment after consultation with the Postpetition Agent and Committee, is financially capable of consummating the sale transaction in a timely manner shall be permitted to further participate in the Bidding Process. The Sale Agent may require an update of such information and an affirmation of any Potential Bidder's financial capability to bid and consummate any sale transaction contemplated hereunder.

### Due Diligence for Potential Bidders

To obtain due diligence access or additional information from the Debtors, a Potential Bidder must first advise the Sale Agent of the nature and extent of additional due diligence such Potential Bidder may wish to conduct. The Sale Agent shall coordinate all requests for additional information and due diligence access by such Potential Bidders with the Debtors. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline, except as otherwise agreed to by the Sale Agent in writing after consultation with the Postpetition Agent.

### Submission by Bid Deadline

A Potential Bidder who desires to make a Bid must deliver a written copy of its written purchase or agency agreement marked to show the specific changes to the Purchase Agreement that the Potential Bidder requires (which marked copy may be an electronic comparison of the written agreement submitted and the Purchase Agreement) on or before **October 13, 2017** to the Sale Agent. The Sale Agent may, after consultation with the Postpetition Agent, extend the Bid Deadline, but shall promptly notify all Potential Bidders of any such extension.

## Determination of "Qualified Bid" Status

A Bid received from a Potential Bidder by the Bid Deadline will constitute a "**Qualified Bid**" only if it includes all of the following documents (the compliance of which shall be determined by the Sale Agent after consultation with the Postpetition Agent) (collectively, the "**Required Bid Documents**") and a Good Faith Deposit as described below and meets all of the Bid Requirements (as defined below):

(a)     A written **asset purchase agreement or agency agreement** duly executed by the Potential Bidder in substantially the same form as the Purchase Agreement with changes only regarding the applicable assets and contracts being purchased and any other changes acceptable to the Sale Agent after consultation with the Postpetition Agent, together with a copy of such agreement **marked to show the specific changes to the Purchase Agreement** that the Potential Bidder requires (which marked copy may be an electronic comparison of the written asset purchase agreement submitted and the Purchase Agreement). The asset purchase agreement submitted by a Potential Bidder shall:

i.      specifically delineate which individual asset, portion of the Debtors' assets, or all of the Debtors' assets set forth in a schedule prepared by the Sale Agent, after consultation with the Postpetition Agent and Committee, that will be posted in the Debtors' data room (the "**Property Schedule**") a Potential Bidder proposes to purchase;

ii.     include a complete set of all schedules and exhibits thereto which, to the extent practicable, will be marked to show the specific changes to the schedules and exhibits to the Purchase Agreement, if applicable;

iii.    not contain any financing or due diligence contingencies to closing on the proposed sale transaction;

iv.     not contain any condition to closing of the sale transaction on the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approvals, if any); and

v.      provide that the offer of the Potential Bidder is irrevocable through thirty (30) days after the entry of an Order approving the Sale Motion and subject to the backup bidder provisions herein.

(b)     A good faith deposit (the "**Good Faith Deposit**") in the form of a wire transfer to the Debtors or a certified or bank check payable to the order of the Debtors (or other form acceptable to the Debtors with approval by

4

Postpetition Agent) in the amount of at least 10% of the purchase price or guaranteed amount for the Assets proposed to be purchased.

Each Potential Bidder that makes a Qualified Bid shall be referred to as a "**Qualified Bidder**." Each of the Postpetition Agent and the Prepetition Agent shall be a Qualified Bidder.

## Bid Requirements

All Bids must also satisfy all of the following requirements, all as determined solely by the Sale Agent after consultation with the Postpetition Agent:

(a)    The Bid must provide for consideration under the Purchase Agreement for the Assets proposed to be purchased.

(b)    The Bid must be in cash unless otherwise consented to by the Sale Agent, after consultation with the Postpetition Agent.

(c)    The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the sale transaction in a timely manner.

(d)    The Bid must satisfy the Overbid Requirement by exceeding the initial bid of the Joint Venture by at least $600,000 (the Break-Up Fee plus $100,000). Thereafter, each Bid must exceed the high bid by no less than $100,000.

(e)    The Bid (other than the initial bid by the Joint Venture) cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

(f)    The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the assets and businesses of the Debtors and the sale transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets and businesses of the Debtors in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of the Debtors or the sale transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Purchase Agreement ultimately accepted and executed by the Debtors, and (iv) has authority to make the Bid, execute any necessary documents to close on the sale transaction, and proceed to closing on the sale transaction.

(g)    The Bid must be received by the Bid Deadline.

5

**Auction**

Prior to the Auction (as defined below), the Sale Agent (in consultation with the Postpetition Agent) shall evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that the Sale Agent determines in its business judgment to be the highest or best Qualified Bid(s) (the "**Initial Highest Bid**") for a sale of the Assets of the Debtors' estates. In making this determination, the Sale Agent may consider, among other things, the amount of cash to be paid or delivered, and the other terms and conditions of the Qualified Bid(s). The Sale Agent shall provide copies of all Bids to the Postpetition Agent promptly after the Bid Deadline, but not later than Midnight prevailing Central time on **October 13, 2017**.

If more than one Qualified Bid has been submitted for the particular Assets of the Debtors' estates in accordance with these Bid Procedures, the Sale Agent will conduct an auction (the "**Auction**") with respect to such Qualified Bids in order to determine, in the business judgment of the Sale Agent after consultation with the Postpetition Agent and Committee, the Successful Bid(s).

The Auction, if required, will commence at 11:00 a.m. (prevailing Central Time) on **October 17, 2017** at the offices of Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, or at such later time or other place as agreed by the Sale Agent after consultation with the Postpetition Agent, or approved by Order of the Bankruptcy Court, and of which the Sale Agent will notify all Qualified Bidders who have submitted Qualified Bids (collectively, the "**Auction Participants**").

The Sale Agent shall give each of the Auction Participants notice of the Initial Highest Bid and a copy of such Bid prior to the scheduled start of the Auction.

Only the Debtors, the Sale Agent, the Auction Participants, potential financing sources of the Auction Participants, the Postpetition Agent, the Prepetition Agent, the Committee and their respective Representatives will be entitled to attend, participate and be heard at the Auction.

At the commencement of the Auction, the Sale Agent shall formally announce the Initial Highest Bid(s) and the assets to which they relate. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments higher than the previous Qualified Bid in the amount of $100,000 or such other amount to be established by the Sale Agent after consultation with the Postpetition Agent.[3]

The Sale Agent after consultation with the Postpetition Agent shall have the right to adopt such other rules for the Auction which the Sale Agent believes in its business judgment will promote the goals of the Auction, including, without limitation, that the Sale Agent can continue to take and negotiate bids in lot or in bulk until the Successful Bid(s) have been selected.

Each Auction Participant shall be deemed to have agreed to keep its final Qualified Bid made at or prior to the Auction open through thirty (30) days after the entry of an Order

---

[3] Minimum bid increments, other than a credit bid pursuant to a Credit Bid Right, must consist solely of cash consideration unless otherwise authorized by the Sale Agent after consultation with the Lenders.

approving the Sale Motion. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid(s) are determined in the business judgment of the Sale Agent after consultation with the Committee and Postpetition Agent. To facilitate a deliberate and orderly consideration of competing Qualified Bids submitted at the Auction, the Sale Agent after consultation with the Postpetition Agent may adjourn the Auction at any time and from time-to-time and may conduct multiple rounds of bidding. Prior to conclusion of the Auction, the Sale Agent after consultation with the Postpetition Agent may permit one or more Auction Participants who have submitted bids for less than all Assets of the Debtors to join together as a single Qualified Bidder for the purpose of submitting a joint Qualified Bid to acquire substantially all Assets of the estates, provided that such Auction Participants so join without improper collusion under the Bankruptcy Code or other applicable law. Upon conclusion of the Auction, the Sale Agent, in consultation with the Postpetition Agent, will (a) review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (b) after consultation with the Committee and the Postpetition Agent, identify the Successful Bid(s). In making this determination, the Sale Agent, after consultation with the Postpetition Agent and the Committee, may consider, among other things, the amount of cash to be paid or delivered and the other terms or conditions of the Qualified Bid(s), and the determination by the Sale Agent, after consultation with the Postpetition Agent and the Committee, shall be final for the purposes of these Bid Procedures.

### Credit Bid Rights

Credit Bid Right. The right to credit bid under section 363(k) of the Bankruptcy Code is specifically preserved. The Postpetition Agent, on behalf of the Postpetition lenders,[4] and the Prepetition Agent, on behalf of the Prepetition Lenders,[5] shall each be deemed a Qualified Bidder in all respects, and shall not be required to submit a Good Faith Deposit, purchase agreement, or any other deliverable or documentation to the Sale Agent, the Debtors, or their representatives or agents and may credit bid, in their respective discretion, at the Auction. Further, each of the Postpetition Agent and the Prepetition Agent may submit a credit bid, in such party's respective sole and absolute discretion, at any time prior to announcement of the Successful Bid(s), regardless of whether such party participated in prior rounds of the Auction, on any individual asset, portion of the assets, or all assets constituting its respective collateral. ***Credit bidding by all junior lien holders will be prohibited***, but all rights, claims and objections will be reserved and can be asserted against the sale(s) proceeds, if any.

### Sale Hearing

An evidentiary hearing to consider the Sale Motion and approval of the Successful Bid(s) (the "**Sale Hearing**"), will be held on or before **October 20, 2017 at 9:00 a.m. prevailing Central time** (the "**Sale Hearing**"), in the courtroom of the Honorable Kathleen H. Sandberg,

---

[4] Under the DIP Financing Motion the Debtors sought Court approval for a senior secured postpetition revolving loan facility of up to $15,000,000 with certain of their prepetition first-lien lenders as defined in the DIP Financing Motion (the "**Postpetition Lenders**").

[5] Each of the Debtors other than WYNIT Holdings, Inc. is a borrower under a Credit Agreement, dated November 29, 2016 under which Wells Fargo Capital Finance, as administrative agent for itself and other participating lenders (collectively, the "**Prepetition Lenders**"), has authority to act as secured lender.

United States Bankruptcy Judge, at the United States Bankruptcy Court, District of Minnesota, 300 South Fourth Street, Courtroom 8 West, Minneapolis, Minnesota 55415. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court without further notice to creditors and parties in interest other than by announcement by the Debtors of the adjourned date at the Sale Hearing.

The Debtors' presentation to the Bankruptcy Court for approval of the Successful Bid(s) does not constitute the Debtors' acceptance of the Bid(s). The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

## Objections

Objections, if any, to the Sale Motion shall be filed on the docket of the Bankruptcy Court and served such that each objection is actually received by the following parties **before 5:00 p.m. on October 18, 2017 (the "Objection Deadline")**: (a) counsel for the Debtors at Stinson Leonard Street LLP, Attn: Robert Kugler, 50 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402 robert.kugler@stinson.com, (b) counsel to Wells Fargo Bank, N. A. at Greenberg Traurig, LLP, Attn: David Kurzweil, 3333 Piedmont Road NE, Ste. 2500, Atlanta, Georgia 30305 kurzweild@gtlaw.com (c) the United States Trustee's Office, attn. Michael R. Fadlovich, 300 South Fourth Street, Suite 1015, Minneapolis, MN 55402 Michael.Fadlovich@usdoj.gov.

If any Auction Participant whose Qualified Bid is a Successful Bid (a "**Successful Bidder**") fails to consummate the Transaction because of a breach or failure to perform on the part of such Successful Bidder, or for any reason other than the failure of the Bankruptcy Court to approve the terms of the sale transaction, the Auction Participant that had submitted the next highest or otherwise best Qualified Bid for the same asset or assets of the estates at the Auction or prior to the Auction (the "**Back-Up Bidder**") will be deemed to be the Successful Bidder, and the Debtors will be authorized to consummate the sale transaction with such Auction Participant without further order of the Bankruptcy Court, and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Auction Participant submitting such Qualified Bid shall within three (3) business days after such notification provide a Good Faith Deposit (unless such Auction Participant previously shall have provided a Good Faith Deposit that shall not have been returned as described below). Upon providing such Good Faith Deposit, such Auction Participant shall be deemed the Successful Bidder. If any Auction Participant fails to consummate the sale transaction because of a breach or failure to perform on the part of such Auction Participant (including, without limitation, the failure to timely deposit the Good Faith Deposit), the process described above may continue with other Auction Participants in decreasing order of the Qualified Bids as determined by the Sale Agent after consultation with the Postpetition Agent until an Auction Participant shall consummate the sale transaction.

## Disposition of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder(s), or a Back-Up Bidder that consummates a transaction in place of a Successful Bidder as provided for herein, shall be retained by the Debtors and applied toward the payment of the Successful Bid(s) at the closing of

8

the sale transaction. If any Successful or Back-Up Bidder fails, for any reason other than Bankruptcy Court denial of the sale transaction, to close a sale transaction, then the Good Faith Deposit shall be retained by the Debtors as partial damages for the failure to consummate the sale transaction. The Good Faith Deposit of all Qualified Bidders (other than the Successful Bidder(s), a Back-Up Bidder that consummates a sale transaction in place of a Successful Bidder as provided for herein, or a Successful Bidder or a Back-Up Bidder that forfeits its deposit as liquidated damages as provided for herein) will be returned, without interest, to each such Qualified Bidder within ten business days after the closing of all proposed sale transactions approved by the Bankruptcy Court at the Sale Hearing.

## **Modifications**

The Sale Agent, after consultation with the Postpetition Agent, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of the Sale Agent, after consultation with the Postpetition Agent and Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors. At or before the conclusion of the Auction, the Sale Agent, after consultation with the Postpetition Agent, may impose such other terms and conditions upon Qualified Bidders as the Sale Agent determines to be in the best interests of the Debtors' estates in these cases.